RICE et al. v. SHARPLEIGH HARDWARE CO.

(Circuit Court, W. D. Tennessee, W. D. January 10, 1898.)

No. 3,436.

1. GARNISHMENT—PLAINTIFF GARNISHING HIMSELF.
   Neither the provision of the Tennessee statutes for garnishment of debts, etc., in the hands of "third persons" (Mill. & V. Code, § 4219), nor that authorizing attachments upon any real or personal property, "debts, or choses in action in which defendant has an interest" (section 4241), authorizes a plaintiff to garnish himself for a debt due the defendant.

2. STATE AND FEDERAL COURTS—COMITY.
   A federal court may, in the exercise of that mutual comity often necessary between the state and federal courts to prevent injustice, take action upon the mere suggestion of counsel as to the condition of related litigation in the state courts, though the facts do not appear upon the record.

3. SAME.
   An action on a legal demand was brought by a nonresident corporation in one of the chancery courts of Tennessee, which courts, under the state statutes, have concurrent jurisdiction with the law courts of all actions of legal cognizance, except those for unliquidated damages. The defendants, having a counterclaim for unliquidated damages, thereupon sued the corporation in a court of law, and garnished themselves, as admitted debtors

of the corporation. This suit was removed by the corporation to a federal court, and the corporation specially appeared therein, not consenting to the jurisdiction, and filed a plea in abatement, alleging that the state laws did not permit a pláintiff to garnish himself. *Held*, that while this was true, so that the process must be quashed, the court, to prevent the injustice of allowing a nonresident corporation to come into the state and sue a citizen without submitting to a cross action, would retain jurisdiction, with leave to plaintiffs to issue alias process, and continue the same from term to term until they should find some means of serving notice or compelling an appearance.

## At Law.

The plaintiffs sued the defendant company by attachment, in the state court of proper jurisdiction, in an action of damages for a breach of contract, alleging that the defendant had bound itself for one year to sell its bicycles, at fixed prices, only to the plaintiffs, within certain specified territory of the states of Tennessee, Mississippi, and Arkansas, and that in violation of that agreement, without the consent of the plaintiffs, they had sold and contracted to sell to other dealers within that territory a large number of their bicycles, with the intention to assist the said dealers to break down, injure, and destroy the plaintiffs' trade. This attachment was served by garnishment upon the plaintiffs themselves, who answered the garnishment, saying that they were indebted to the defendant in the sum of $2,814.02; and thereupon publication was had according to the practice in the state courts of Tennessee in attachment cases, requiring the defendant to appear and answer the suit at a specified term of that court. The defendant made a special appearance in the state court for the purpose of objecting to the jurisdiction over it, and the manner in which it had been attempted to bring it before the court; and thereupon, being allowed to so specially appear, defendant moved to quash the writ of garnishment, upon the ground that the defendant had never been before the court, nor had it been cited in any manner that was legal, and that, the court having no jurisdiction, the proceeding should be dismissed. The second ground of the motion was more specifically set out to be that the defendant was a nonresident corporation, being chartered by the state of Missouri, and that the garnishment had been levied upon the plaintiffs themselves, and not upon any third person, as required by Mill. & V. Code, § 4219, wherefore, the attachment being void and illegal, the court had no jurisdiction over the person or property of the defendant company. This motion was overruled by the state court, and thereupon the defendant company filed its petition and bond for the removal of the case to this court. The order of removal was granted by the state court, and the transcript has been filed here. The defendant company appeared here specially, as before, and filed a motion asking leave of the court to renew in this court the same motion to quash the attachment or service by garnishment which had been overruled in the state court, which leave was granted for the reasons stated in an opinion of the court filed January 2, 1897. Having thus obtained leave, a motion to quash was filed here on the same grounds as were set out in the state court; but afterwards, by leave of the court, that motion was withdrawn, and upon a like special appearance, pretermitting any general appearance, and not consenting to any jurisdiction of the court, or waiving any right to except thereto, a plea in abatement was substituted, alleging that the proceeding is not in accordance with the state statute authorizing attachments by garnishment, because it is levied upon plaintiffs themselves, as the garnishees, and not upon any third person, as required by the statute. It prays that the levy of the sheriff, and his return thereon, be quashed. This is all that appears by the record. But it is suggested by counsel at the bar, and in the brief for the plaintiffs, that the defendant company, prior to the commencement of this attachment suit by the plaintiffs, had filed their bill in the chancery court of Shelby county, Tenn., against the plaintiffs, seeking to recover from them the sum of $2,800, due upon their contract of agency for the sale of their bicycles for the years 1895, 1896; that the plaintiffs here filed their answer and cross bill in that suit, alleging that they had a demand for unliquidated damages for a breach of the same contract of agency which was sued upon, and had asked that the defend-

ant here, who was the plaintiff there, should be enjoined from prosecuting that suit until it should enter a general appearance in a damage suit instituted by the plaintiffs against the defendant in the circuit court of Shelby county; and that the injunction was granted by the chancellor. That was the same suit at law which was subsequently removed to this court, and with which we are now engaged on the hearing of this motion. It should be stated here that under the laws of Tennessee the chancery court has jurisdiction, concurrently with the courts of law, of all actions of legal cognizance, except those for unliquidated damages, and the suit of the defendant against the plaintiffs was nothing more than an action at law brought in the chancery court under the forms of pleading and procedure adapted to that court. Counsel for the defendant company object strenuously to the consideration of these last-mentioned facts, because they are not pleaded in any way, and do not appear except by the suggestion of counsel.

Brown, Hirsch & Brown, for plaintiffs.
Myers & Banks, for defendant.

HAMMOND, J. (after stating the facts). This case is very peculiar, and I have been perplexed to know what to do with it. The defendant is a Missouri corporation, entitled, under the principles laid down in Pennoyer v. Neff, 95 U. S. 714, and other cases of like authority, to exemption from suits in other states which shall, without due process of law, bind it to personal judgment, except so far as it may have submitted itself to these outside jurisdictions; but, by the same principles and authority, whatever property it has situated in another state is undoubtedly subject to appropriation in that state, by attachment or other proceedings for that purpose, to the payment of any debts which it may owe to citizens of that state. It is a primary principle in all jurisprudence that whenever a nonresident comes within the jurisdiction of a state, and sues its citizens, as in this case the defendant company did when it sued the plaintiffs here, it submits itself to that jurisdiction for all the purposes of that suit, and whatever remedy the defendant has against the nonresident plaintiff by way of set-off or cross action in that suit may be enforced against the nonresident, as it may against any other plaintiff, and for that purpose every court in which a suit is pending has a right to compel the nonresident plaintiff to submit to answer and defend against the cross action; and under this principle it is obvious that, if the chancery court in which the defendant company brought its suit at law could have maintained a cross action for unliquidated damages, there would have been no difficulty in having the very litigation we have in hand carried on in that suit. But, inasmuch as our Tennessee statute conferring upon the chancery court jurisdiction of actions at law by express terms excludes it from entertaining suits for unliquidated damages, the plaintiffs here were compelled to go into a court of law to bring their suit. Mill. & V. Code, § 5043. And, being so compelled, we have the anomaly, as a result of this Tennessee legislation, that parties having cross actions against each other, of purely legal cognizance, which could be well and entirely settled between them in a court of law in one suit, are separated from each other, unnaturally, so to speak, and one is in a court of chancery with his action at law, and the other is in a court of law with his cross action at law, both arising out of precisely the same

contract between the parties, which, by every principle of convenience, to say the least of it, ought to be settled, if possible, in the same suit, whether at law or in equity. This jurisdiction of the Tennessee chancery court is an unnatural, and in this case an obstructive, one, of which this nonresident corporation seeks to take advantage by refusing to appear in the action at law against it, hoping thereby to evade the jurisdiction of that state, into which it has come to collect its own debt against one of the citizens of that state. If allowed thus to take advantage of an anomalous condition, result of the litigation will be that it avoids the effect above mentioned of its voluntary appearance in the courts of Tennessee to sue a citizen of that state. I feel quite sure that this cannot successfully be accomplished, and yet I am not at all sure how its appearance to this suit can be compelled, for the situation is further complicated in its perplexities by the removal of the suit at law from the state court in which it was brought to this court. It has occurred to me that it might be proper to remand this case to the state court, upon the ground that it is a cross action, which is only a part of, or ancillary, to, the suit in the chancery court,—separated, to be sure, by the peculiar legislation of Tennessee, but none the less within the purview of our jurisdiction, the same as if they were both pending in the same court, and united to each other, as they might and would be but for that separating legislation. I have not much doubt but what our courts may, as a mere matter of comity, refuse to entertain a jurisdiction, otherwise unobjectionable,·where it shall appear that by the removal the adverse party is injuriously affected, beyond our power to redress; nor have I any doubt that the court should take this action of its own motion whenever such a condition appears. But, inasmuch as an order to remand would be final, and not reviewable anywhere, I have concluded not to take that course, for the present, at least; and I am the more inclined to do this since the pendency of the suit in the chancery court does not appear in this record by any pleading or proof, by affidavit or otherwise, or verified record, but only by a suggestion of counsel. To overrule this motion, and thereby compel the defendant to appear here to answer this suit, would be to accomplish substantially that which could have been done if the two suits had remained in the same jurisdiction and the same court, and should be there tried together in the very court to which the defendant company itself voluntarily resorted to bring its own suit against the plaintiffs. That is to say, it would enable the plaintiffs to maintain their cross action against the defendant for unliquidated damages, and, if they recover a judgment here, to then appear in the state chancery court, where the defendant's suit has already been stayed for that purpose, and plead it as a set-off to the defendant's claim against the plaintiffs. But I am satisfied that the law is with the defendant company upon this motion; that the attachment, the service by garnishment upon the plaintiffs themselves, and the order of publication to appear, are not in accordance with the laws of Tennessee in that behalf; and that by that procedure jurisdiction over the person of the defendant company has not been acquired in the state court or in this court. But it does not follow

from this that this suit is to be dismissed, but only that the process and its service shall be quashed. The suit may remain for such further service as the plaintiffs may be able to secure; and the question which has perplexed me is, how can the defendant company be compelled to do that which it ought to do under the circumstances above stated,—enter its appearance, and answer this suit within the jurisdiction of the state of Tennessee, either in the state court or this court; both being courts of the state of Tennessee, within that purview, and for that purpose? In the chancery court an injunction has already been had against the defendant company, forbidding it to proceed in that court until it shall have entered its appearance in this suit, and until it shall be finally determined. It is not a mandatory injunction, but only a stay order. I take it that after the cross bill, and injunction or stay order granted on it, the defendant company would not be allowed by the chancellor to dismiss that proceeding, or to depart from that jurisdiction, for the purpose of suing elsewhere, and that it cannot proceed to the collection of its claim against the plaintiffs until it does enter its appearance here. Stevens v. Railroad Co., 4 Fed. 97; Chicago & A. R. Co. v. Union Rolling-Mills Co., 109 U. S. 702, 3 Sup. Ct. 594. Therefore, I shall at least not dismiss this suit, but allow it to remain here, with leave to the plaintiffs to issue alias process, and continue from term to term with such alias until they may either find some means of serving the writ, or compelling appearance to this suit. For the present, at least, this answers the court's sense of justice, in refusing to allow the defendant company to evade the familiar practice of submitting fully to the dominion of the state into which it voluntarily has come to collect a debt against two of its citizens, thereby completing within that dominion a settlement of all controversies arising between it and these citizens of Tennessee out of the same contract upon which it sues. And I have concluded that the court should take this course upon the mere suggestion of counsel as to the disjointed condition brought about, or at least intensified, by the removal of a part of the litigation to this court. Courts are always ready and anxious to aid each other, through that mutual comity which is often necessary under our dual system of government, to prevent injustice, without any formality of pleadings or practice.

It remains, however, to give the reasons for ruling that this garnishment has not accomplished the purpose of bringing the defendant company into court to answer this suit. On principle, it will readily occur to almost any one that to allow a plaintiff in attachment to garnish himself as a debtor to his creditor, whom he made a defendant for that purpose, is a distortion of the process of garnishment from its ordinary uses, and in itself suggests that some ulterior or sinister purpose is to be accomplished. If two parties owe each other, the two debts, so far as they go, set themselves off; and from time immemorial the courts of law have afforded them an ample opportunity to set them off against each other whenever either brings an action at law. And whatever defects formerly existed in courts of law have long since been supplemented by remedies in equity, so that it is never necessary that either should attach the other by garnishment for the sim-

ple purpose of setting one debt off against the other; and this case well illustrates the whole scope of such procedure. The manifest purpose of this attachment and garnishment was to compel a disputing nonresident debtor, who was at the same time an acknowledged creditor, to come into this state to try conclusions in the litigation at the home of one of the litigants, rather than the other, though it must be said that there is more justification for it in this case than ordinarily would arise, because the Tennessee litigant had already been sued in Tennessee by the nonresident litigant. But, after all, it was wholly unnecessary, for I take it that the chancery court in which the nonresident creditor brought his suit had full power to do what it did do, which probably already affords sufficient protection, and perhaps has the power to go still further, and compel by 'mandatory order the attorneys of the nonresident litigant to enter that litigant's appearance to any necessary cross action within the jurisdiction of the state. And even if the defendant company had sued the plaintiffs here at law in this state, and there had been any sufficient reason why in the same suit, by a cross action, the alleged damages to be set off could not be obtained, but it required an independent action at law, a court of equity, of competent jurisdiction, upon a bill filed for the purpose, would have enjoined the nonresident from proceeding with his action at law until he should make an appearance to the resident's independent action at law, or, if necessary, would go further, and compel the attorneys in the litigation, by mandatory injunction, to enter an appearance for him, or possibly the court at law itself might stay the action of the nonresident until he did appear to his adversary's cross action. And certainly, where the remedies at law were unduly obstructed, a court of equity would lay hold of the parties and their agents and attorneys within the jurisdiction, and compel them to do and perform all acts that were necessary to accomplish the equitable purpose of setting off one debt against the other. International or interstate complications might be presented, but in this day and time, within our Union at least, there is little difficulty in overcoming such complications in the ordinary course of litigation. Even if there should be other property of the defendant company within the state (such, for example, as debts owed to it by third persons), as long as the plaintiffs here were confessedly indebted to the defendant to the extent of that indebtedness there would be no occasion to levy by attachment or otherwise upon the property of the defendant company to answer their claim; and a court of equity would not permit that kind of injustice, but would compel the parties to set off their debts against each other, so far as they would go. Therefore, except for the purpose of acquiring jurisdiction, which, as has been suggested already, was not necessary, this attachment proceeding by garnishment was ulterior in its purpose, if not sinister. There can be little doubt that they were considerations like these that prompted the use of the language of the Code of Tennessee which authorizes attachment by garnishment. It is as follows:

"When property, choses in action, or effects of a debtor, are in the hands of third persons, or third persons are indebted to such debtor, the attachment may be made by garnishment." Mill. & V. Code, § 4219.

On the language of this statute, there could be no pretense of sustaining this attachment by garnishment. It is my opinion that the right to it must stand or fall by these very words, and that there are no other provisions of law in the Code of Tennessee which enlarge the precise right conferred by the explicit wording of this statute, namely, that garnishment is confined to debts due by third persons. This section of the Code was taken, it is said, from section 22, c. 1, of the Acts of 1794. It is purely a statutory proceeding, was not at all founded on the processes of the common law, and it has been well settled by all the authorities that like statutes are to be strictly construed, at least where the parties have the relation to each other that they have in this case. Drake, Attachm. 437–451; Wade, Attachm. 2, 3, 333; Rood, Garnish. 8.

An ingenious argument is made in behalf of the plaintiffs, upon the authority of the cases of Boyd v. Bayless, 4 Humph. 386, and Arledge v. White, 1 Head, 239, in both of which cases, by attachments in chancery, debts due from the defendants to the plaintiffs were set off against debts due from the plaintiffs to the defendants. It does not at all appear by either of these cases that the process used was garnishment, and in the first case it is stated that the purpose was accomplished by injunction and attachment. These two cases arose under Act of 1835-36, p. 143, c. 43, which is entitled "An act more effectually to subject property in this state belonging to nonresident debtors, to the payment of their debts due citizens of this and other states." That act and another passed at the same session are the main roots of our peculiar Tennessee jurisprudence, so enormously enlarging the jurisdiction of the chancery court that it has at last absorbed quite all the common-law jurisdiction, except suits for personal injuries, and jurisdiction over crimes. It has now almost complete concurrent jurisdiction with courts of law in all matters of contract, unless the suit involves unliquidated damages, and it is by reason of this very peculiarity that the controversy we have in hand arises. This act of 1836 was professedly in aid of the ordinary jurisdiction theretofore existing in a court of equity, as well as an enlargement of equitable remedies. The first section gave a remedy by bill in equity to subject the property of the nonresident, without having first recovered a judgment at law, so that it was not necessary to go to his home state, or catch him in this state, to sue at law; and it so extended that remedy as to subject to it legal as well as equitable assets, comprehending therein all classes of property, real, personal, choses in action, and debts. But it was confined by its very terms to the chancery court; its main object being to extend the ordinary remedies for the subjection of equitable assets to satisfy a judgment at law to the subjection of mere legal assets as well, without any previously obtained judgment at law, and nulla bona return, and to bring nonresident as well as resident debtors within the scope of this enlarged jurisdiction in equity. There is no mention made in it of garnishment, except in the sixth section. The ordinary process of garnishment, as then known to the laws of the state under execution, was intended to satisfy an execution authorized to issue, from any deficit that remained after the application of the assets which had been attached under the bill filed to enforce the new

grant of jurisdiction. It did not, in any sense whatever, enlarge the then existing law under the act of 1874, c. 1, authorizing original attachments at law. The chancery court, before the Code, had acquired, by this and co-existent statutes, all the jurisdiction that a court of law had over any attachment, as well under the act of 1874 as all other acts; but, also, the chancery court had always had a much more comprehensive jurisdiction, through the remedy we commonly call "equitable attachments," than was given to other courts by this original attachment at law. But we look in vain to this legislation for any enlargement of the original attachment at law; and certainly the original feature of an original attachment in courts of law by process of garnishment of third persons as debtors has not been extended to take in the plaintiff himself, as a debtor to the defendant, by any of this legislation expanding the jurisdiction of the chancery court in that regard. Before this act of 1836, and always, a judgment creditor with a nulla bona return could go into a court of equity, and, by the ordinary processes of sequestration, injunction, and the like, subject debts due from third persons to the creditor, or set off debts due from the judgment creditor to the judgment debtor in satisfaction of the judgment of either, but no process of garnishment was ever necessary to administer that relief. The necessary parties were made defendants to the bill, being required to answer or discover, by the ordinary processes for that purpose, and the effects, whether debts, choses in action, or what not, were subject to the plaintiff's claim by the ordinary processes in equity for that purpose, namely, injunction, sequestration, attachment, fieri facias, contempt for disobedience, and the like, if the effects were within the dominion of the state; and in one of these very cases (Boyd v. Bayless, 4 Humph. 386) the case was argued and proceeded with before the supreme court as if the questions involved related exclusively to the ordinary power of a court of chancery to decree a set-off; and the act of 1836 was not relied upon in that case at all, until Mr. Justice Reese, in delivering the opinion of the court, called attention to it as being a legislative resolution of all the difficulties in that case, through the enlargement of the powers of the chancery court contained in that act. The case of Arledge v. White being very imperfectly reported, it is difficult to determine what are the "general principles" mentioned by the court; but the only effect of it was to hold that, whether at law or in equity, an outside creditor could not interfere with the ordinary process of equitable set-off between the plaintiff and the defendant by resorting to our attachment laws, and that is all there is in these cases.

Now, this act of 1835–36 amplified the powers and remedies of a chancery court in the exercise of that jurisdiction which it had before, of subjecting debts due to the defendant to the process of set-off, and to the satisfaction of creditors residing in Tennessee, where their debtors were nonresident, by allowing these remedies to be executed when there was no judgment at law, and solely upon the ground of the nonresidence of the debtor. But I repeat again, there is not a syllable in any of this legislation that enlarged in any way the process of garnishment in an original attachment at law, as known to the act of 1794. Mill. & V. Code, § 4219 et seq., 1 Thomp. & S.

Code, § 3455 et seq., and Mill. & V. Code, § 4219 (Thomp. & S. Code, § 3478), above quoted, are in entire harmony with the general scheme displayed in all the legislation, to first give an example, but nevertheless, as to the process of garnishment, restricted jurisdiction to courts of law by original attachment, and then to confer not only this same jurisdiction upon courts of chancery, but likewise very much extend their own jurisdiction over the matter of subjecting all kinds of assets more directly to the payment of all kinds of debts through and by means of the peculiar remedies known to a court of equity, of which garnishment, as at law, was not one. This section (4219) of attachment by garnishment was unnecessary to a court of equity, although, along with all the other jurisdiction by original attachment, it was in fact conferred upon that court, because the same purpose could have been accomplished by the ordinary process of compelling the debtor to answer as a party to the suit, and controlling him by direct decree; yet I do not see how the jurisdiction of a court of law over an original attachment, operating through the process of garnishment, can be enlarged or receive any aid whatever from legislation particularly designed for our peculiar chancery jurisdiction. The argument of the plaintiff is that section 4241, Mill. & V. Code (section 3500, Thomp. & S. Code), is a substantial re-enactment of the act of 1836 above mentioned, as interpreted by the cases of Boyd v. Bayless and Arledge v. White, supra; ignoring the fact that these two cases were of equitable cognizance, under the act of 1836, which was by its terms confined to the jurisdiction of the chancery court. That section reads as follows:

"Attachments may be levied upon any real or personal property either of a real or equitable nature, debts or choses in action, whether due or not due, in which the defendant has an interest." Mill. & V. Code, § 4241 (Thomp. & S. Code, § 3500).

It is conceded by counsel for the plaintiffs that this section of the Code does not in express terms state that the resident debtor may attach a debt due by himself, but it is insisted that because that could be done, under the act of 1836, in the chancery court, it can now be done, under the last above quoted section of the Code, in a court of law, for the reason that section 4997, Mill. & V. Code (Thomp. & S. Code, § 4225), confers upon the circuit courts all general jurisdiction, where it is not conferred upon any other tribunal. This assumes that the jurisdiction of the act of 1836 conferred upon the chancery court no longer belongs to that court, which is a mistake, for it will be found that in the codified section 5022 et seq., Mill. & V. Code (section 4279, Thomp. & S. Code), that jurisdiction is conferred upon the chancery courts in the fullest manner possible, as well as all that other jurisdiction created by chapter 4, of the acts of 1835, passed at the same session of the legislature to establish the chancery courts, and to regulate their jurisdiction, and, besides this, all that growth of jurisdiction which had come to that court by subsequent and amendatory legislation, up to and including the Code of 1858, from which we are quoting. I do not know but what it is an assumption upon the part of counsel for the plaintiffs that Mill. & V. Code, § 4241 (Thomp. & S. Code, § 3500), above quoted, is a substantial re-enactment

of the act of 1836 above mentioned; but it is not necessary to decide that point, for it is the mere extraction from all the legislation then existing in 1858 of our general rule that attachments may be levied upon all property, real or personal, legal or equitable, debts, or choses in action; but all sections of the Code must be construed together, and this section must be taken in connection with Mill. & V. Code, § 4219 (Thomp. & S. Code, § 3478), just preceding it in the same chapter, if not in the same article, which confines the levy by garnishment to effects and debts in the hands of third persons; and the restrictions of that section are mere restrictions of procedure, for, while tangible effects in the hands of a third person who was a debtor might be attached by direct seizure of the sheriff on the writ of attachment, they might also be levied on while left in the hands of a third person, he being required to answer by garnishment what effects of the defendant in the attachment suit he had in his hands; but, if the property be a debt which the third person owed, then the sheriff, of course, could not attach it by any direct seizure, and the third person so indebted to the defendant in the attachment suit necessarily must be summoned into court to answer what he owed, and that is what we properly call a "garnishment." But it does not at all follow from this that if the debt is not one owed by a third person, but is a debt due by the plaintiff in the attachment suit himself, it is covered by this section 4219, Mill. & V. Code (Thomp. & S. Code, § 3478). Indeed, it is especially excluded by the very language of that act from such a process, and justly and rightly so; for where that condition exists it is better met by the ample jurisdiction conferred upon the chancery court by the act of 1836 and its subsequent amendments, down to and including the provisions of the Code of 1858, and found in Mill. & V. Code, § 5022 et seq. (Thomp. & S. Code, § 4279). So this argument of the plaintiffs' counsel, ingenious as it is, must fall, because it is founded upon assumptions that do not exist in the legislation itself, and are not justified by it. It is said in State v. McConnell, 3 Lea, 332, that the general rule for the construction of a code is that in doubtful cases it will be presumed that it was not intended to change, but only to revise or compile, the old statutes, and this is the ordinary rule enforced in all the courts. U. S. v. Bowen, 100 U. S. 508; Myer v. Car Co., 102 U. S. 1; Vietor v. Arthur, 104 U. S. 498; McDonald v. Hovey, 110 U. S. 619, 4 Sup. Ct. 142; U. S. v. Ryder, 110 U. S. 729, 4 Sup. Ct. 196; Taylor v. Bowker, 111 U. S. 110, 4 Sup. Ct. 397; Viterbo v. Friedlander, 120 U. S. 707, 7 Sup. Ct. 962; U. S. v. Le Bris, 121 U. S. 278, 7 Sup. Ct. 894; U. S. v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625; Chicago, M. & St. P. Ry. Co. v. U. S., 127 U. S. 406, 8 Sup. Ct. 1194.

Upon an examination of all these sections of the Code, I am of the opinion that there is ample and abundant jurisdiction in the chancery court to enforce the right of set-off belonging to a creditor in Tennessee against a nonresident debtor, but that such right of set-off cannot be enforced, directly or indirectly, through the process of original attachment and garnishment at law. The home creditor must resort to a court of equity to accomplish what the plaintiffs seek to accomplish here. By such a bill, and by the equitable attachment

of the nonresident's debt due from the home creditor, and the process of publication, he could be brought into a court of equity for all purposes of protecting the home creditor's right of set-off, at least. Beyond that, under Pennoyer v. Neff, supra, he would be compelled, and ought to be compelled, to go to the state where the nonresident resided, for any personal judgment beyond the amount that was necessary to set off the plaintiff's own debt due the nonresident, unless the situation be such that there can be no decision of recovery on that line, but should be one of recovery for the whole claim.   At all events, this section 4219, Mill. & V. Code, has not conferred the right of a, home creditor to bring the nonresident debtor into this state to answer his action of damages by attaching his own debt that is due to the nonresident for the purpose of acquiring personal jurisdiction over him in the original attachment at law.   For whatever remedy he has he must resort to a court of equity, under our Tennessee legislation on this subject.   In this case the remedy has been somewhat embarrassed, as the course of this litigation shows, by the recent acts conferring upon a court of equity full jurisdiction of actions at law arising upon a contract, but denying to it the jurisdiction to ascertain unliquidated damages arising to the other party by a breach of the same contract.   Nevertheless, if the plaintiffs in this case had gone into a court of equity, as they did do by their cross bill, and set up the fact that they had a claim for unliquidated damages, arising out of the same contract, which could only be ascertained by a court at law, the court of equity had ample power to protect them, as partially it sought to do by the injunction that was had in this case; but it might have gone, and may yet go, further, perhaps, and compel the attorneys representing the nonresident creditor in that suit to enter an appearance for their nonresident client to this suit at law.   The voluntary coming of the nonresident debtor within the dominion of Tennessee, and into its court of competent jurisdiction, to enforce his own claim against a citizen of Tennessee, was a voluntary submission by him to the general jurisdiction of the state of Tennessee to compel him to answer whatever claims the debtor he had sued in Tennessee might have against him by way of set-off and recoupment; and whatever difficulties might have existed in a court of equity, with the Tennessee debtor, in enforcing his right of set-off against his own Missouri creditor, if such voluntary resort to the jurisdiction had not been made, did not exist when that nonresident creditor comes into Tennessee to enforce his claim; and that is the case we have in hand.

It is for these reasons I have determined to take the course indicated, of refusing to dismiss this suit, and allowing the plaintiffs to retain it, and keep it alive by alias writs of process until they have, by a resort to a court of equity, compelled the defendants to enter their appearance here, if they do not voluntarily appear.   While the motion of the defendants to quash or abate the writ of garnishment and its service, as being ineffectual to accomplish its purpose, must be granted for the reasons above stated, yet the suit will not be dismissed, and this court will lend every aid that is possible to the state court of equity first acquiring jurisdiction of the defendant's claim against the plaintiffs to compel it to submit to a trial at law of the

claim of their debtor for damages against it. Comity between the courts requires this, and if it did not, and this course could not be maintained, I unhesitatingly should remand this case to the state court, for the reason that this same comity would require that we should decline to take jurisdiction of it, and to leave the parties to carry on their litigation in the state courts where this nonresident defendant commenced it. The only embarrassment I have felt about it is that there is no pleading or other procedure in the record informing us of the facts appertaining to the original bill in chancery, by which the defendant company seeks to collect its debt against the plaintiffs. If counsel for the plaintiffs think it necessary to amend the record in that behalf, they may have leave to take that course, and by replication to the plea in abatement, or by affidavit of the facts, accompanied by a transcript of the record of the chancery court, or by petition appropriate to the purpose, or otherwise as they may be advised, they may make the facts known. But what I act upon here is a conviction that the ordinary rule of comity between the courts is called into action by the mere suggestion at the bar, or suggestions of record, however they may be made, of the facts above referred to. Under our dual system of government, with these concurrent powers of the state and federal courts in operation with the right of removal from one to the other, there would be an intolerable conflict and embarrassment, such as we have here, if the courts did not, in mutual aid of each other, eagerly and amply put in counter operation the amicable rules of comity that should govern all courts under like circumstances. The motion to quash or abate the service of the writ of garnishment upon the plaintiffs themselves will be allowed, but the suit will not be dismissed, and the plaintiffs have leave to issue alias writs from time to time as they may be advised. Ordered accordingly.