# Shuttleworth & Co., v. Marx & Co.

## Attachment.

(Decided Feb. 4, 1909. 49 South. 83.)

*Partnership; General Issue; Admissions.*—Where the action was against an entity described as a partnership and the defendant appeared by counsel and interposed the plea of the general issue, it amounted to an admission of the partnership character and relieved plaintiff of the necessity of proving it.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY,

Action by J. Marx & Co., against J. A. Shuttleworth & Co., begun by attachment. From a judgment for plaintiff defendants appeal. Affirmed.

PETTUS, JEFFRIES & PETTUS, for appellant. The court erred in sustaining demurrer to appellant's plea in abatement as amended.—*L. & N. R. Co. v. Steiner & Lob-man,* 128 Ala. 354; *L. & N. R. R. Co. v. Dooley,* 78 Ala. 524; *A. G. S. v. Chumley,* 92 Ala. 317; *L. & N. R. R. Co. v. Nash,* 118 Ala. 477; *Exchange Bank v. Clements,* 109 Ala. 280; *Penoyer v. Neff,* 95 U. S. 714; *Haddock v. Haddock,* 201 U. S. 577. The states have a right to execute, and construe their own attachment laws and such laws govern.—*Greed v. Bushkirt,* 18 Law Ed. 599; *French v. Hall,* 42 Am. Dec. 341; *Cronan v. Fox,* 15 Atl. 119. The agreed statement of fact does not make out a case for the appellee.—*Russell v. Bellinger,* 40 South. 132; *Mudge v. Thweatt,* 57 Ala. 1.

HENRY F. REESE, for appellee. The authority for this action is found in sections 295 subd. 1, and 2940, Code 1907. The matter could be reached by garnishment.—

*Archer v. Peoples Bank*, 88 Ala. 249. Power over the person of the garnishee confers jurisdiction on the courts of the state where the writ issues and the general tendency of the cases makes the question, whether a non resident creditor could have maintained an action to recover the debt, the criterion of jurisdiction to garnish the debt.—*Harris v. Balk*, 198 U. S. 222; *Blackston v. Miller*, 188 U. S. 189; *L. & N. v. Beer, supra.* (Counsel cites a number of cases from other jurisdictions to sustain the foregoing proposition.) The appearance and the filing of the plea of general issue by the sole defendant is an admission of the partnership character of the defendant and relieves the plaitniff from having to prove that fact.—*Southern Ry. Co. v. Hundley*, 44 South. 95; *Zealy v. Birmingham Co.*, 99 Ala. 579; *Oxford v. Bradley,* 46 Ala. 98. The court is authorized to inspect the initial pleading to ascertain who is the party defendant.—*Simmons v. Sharpe,* 138 Ala. 451.

McCLELLAN, J.—Marx & Co., commenced this action against Shuttleworth & Co., a non-resident of the state of Alabama, by causing the issuance of an attachment, which took the form of a summons to A. A. Davidson and A. C. Thomas, both being residents of the state of Alabama, to answer as garnishees. Thomas, it appears, did not answer. Davidson's answer disclosed an indebtedness to the defendant, and he paid the sum, admitted to be due, into the court. The defendant (appellant) appeared specially and filed its plea to the jurisdiction of the court, alleging that its residence was in the state of Kentucky, that it had not been personally served with process, that Davidson was not possessed in Alabama of any effects of the defendant subject to attachment, that the indebtedness admitted in his answer was for goods sold and delivered to Davidson in Kentucky, that

such debt was payable at Louisville, in that state, and not in Alabama, and that attachment had not been levied on any property of the defendant in Alabama. The plaintiff's (appellee's) demurrer to this plea was sustained, and the errors assigned on that ruling present one of the two legal inquiries to be determined.

The amended complaint, filed, without objection, after demurrer sustained, styles the action thus: "*J. Marx & Co. v. J. A. Shuttleworth & Co.*," and thereafter in the complaint these parties are referred to only as "plaintiffs" and "defendant." Counsel appeared and, subsequent to the amendment, filed a plea of the general issue for the defendant. The point is taken that, since no proof was made of the partnership character of the defendant the judgment is erroneous. If, to determine the capacity in which the defendant was impleaded, we may look to the affidavit for the writ (*Simmons v. Sharpe*, 138 Ala. 451, 35 South. 415), the defendant was sued as a partnership; and assuming that that capacity is imported, though not expressly averred therein, into the complaint as amended, we think that under the plea filed for the defendant the plaintiffs were relieved of the necessity of proving the capacity in which the defendant was sued. This is the rule prevailing as to corporations, and we see no good reason to deny its application to cases where the action is against an entity described as a partnership.—*Sou. Ry. Co. v. Hundley*, 151 Ala. 378, 44 South. 195. The Cases of *Mudge v. Treat*, 57 Ala. 1, and *Russell v. Bellinger*, 146 Ala. 679, 40 South. 132, cited for appellant, were instance where the liability of individuals alleged to compose a firm or partnership was sought to be established by reason of their averred connection with the firm or partnership. Here the action is against the entity as such, and does not seek a judgment in the

[Shuttleworth & Co. v. Marx & Co.]

first instance against the individuals composing the concern. The judgment is not subject to the objection stated.

All of the Justices, except the writer, affirm the ruling of the court below in sustaining the demurrer to the plea to the jurisdiction upon the authority of *Planters' Chemical & Oil Co. v. Waller & Co. Infra,* 49 South 89. The writer bases his opinion in affirmance of the ruling below on the plea to the jurisdiction upon the considerations to be stated.

An investigation of the decisions of this court will disclose that two views have either been declared or enforced with respect to the power of courts in this state to bindingly deal, by means of garnishment, with a debt due a non-resident, not personally served nor appearing, through an appropriation of that debt, and the consequent discharge of the original debtor, to the satisfaction of a demand of a creditor of such non-resident creditor. One of these theories proceeds on the idea that a debt has its situs, unless otherwise stipulated, at the domicile of the creditor, and hence, where the creditor is a non-resident, there could be no property of the non-resident creditor within this state subject to the control of our courts. The other theory, though not amplified in reason in the decision to be referred to, must necessarily proceed on the idea that jurisdiction of the court issuing the attachment, in the nature of garnishment, to appropriate, as before stated, the debt due to a non-resident creditor, is acquired by judicial power over the person of the garnishee (original debtor), upon the assumption that, for purposes of garnishment, such original debtor holds property of his non-resident creditor, and therefore jurisdiction of the garnishee draws to the court issuing the writ jurisdiction of his non-resident creditor to the extent of condemning the debt involved.

The first state theory is supported by *L. & N. R. R. Co. v. Dooley,* 78 Ala. 525; *A. G. S. R. R. Co. v. Chumley,* 92 Ala. 317, 9 South. 286; *L. & N. R. R. Co. v. Nash,* 118 Ala. 477, 23 South. 825, 41 L. R. A. 331, 72 Am. St. Rep. 181. The case of *L. & N. R. R. Co. v. Steiner & Lobman,* 128 Ala. 353, 30 South. 741, is not applicable to the case at bar, in the light of either of the theories stated, for the reason that there the garnishee was brought within the jurisdiction of the court. However, it might be argued, with some show of plausibility, that this case reaffirms the broad doctrine of the *Dooley Case* and its successors. The second stated theory is supported by our case of *Ga. & Ala. R. R. Co. v. Stollenwerck,* 122 Ala. 539, 25 South. 258. There the garnishee was correctly held to be an Alabama corporation, though also chartered in Georgia; but the defendant Smith was a non-resident, and the court affirms the debt to Smith to have been subject to garnishment, notwithstanding the debt may have been created in another state, and notwithstanding Smith may have been a non-resident of Alabama. It is true that immediately following this ruling the court declares the doctrine of situs of a debt as that doctrine is announced in the *Dooley, Chumley, and Nash Cases, supra,* and also cites *E. T. V. & G. R. R. Co. v. Kennedy,* 83 Ala. 462, 3 South. 852, 3 Am. St. Rep. 755. In the opinion in this last-named case it is said that "debts have no local situs, but are suable in any country or locality where the debtor's person may be found." The quoted expression is criticised in *Chumley's Case,* and is there interpreted to mean no more than that debts "have no locality as to suability." It is apparent, as is said in the note to *Goodwin v. Clayton,* 67 L. R. A., at page 217, that the ruling in *Stollenwerck's Case,* declaring the right to subject, by garnishment, the debt due the non-resident creditor, not appearing nor personally

served, is a non sequitur from the doctrine affirmed as upon the authority of the *Dooley* and *Chumley Cases.*

It is thus seen that with us the generl doctrine that personal property has its situs at the domicile of the owner—the creditor—has an exception ingrafted upon it if the *Stollenwerck Case* is sustained, because, in the absence of appearance by a nonresident, or of personal service on him, jurisdiction to deal with the property in any court of a nonresident can only be acquired by lawfully secured control over property belonging to him. Reconciliation of these divergent theories, before stated, is obviously impossible, and to the one or the other this appeal compels a declaration of the adherence of this court. In this state of the law as pronounced by this court, counsel for appellees insists that we should adopt the latter theory, especially in view of the fact that the Supreme Court of the United States, in *Harris v. Balk,* 198 U. S. 245, 25 Sup. Ct. 625, 49 L. Ed. 1023, following the principle declared by that court in *C. R. I. & P. Ry. v. Sturm,* 174 U. S. 710, 19 Sup. Ct. 797, 43 L. Ed. 1144, holds to the theory that jurisdiction of the property of a nonresident creditor is acquired, in garnishment proceedings, by service of that character of process on the original debtor, even when such debtor is merely temporarily within the jurisdiction of the court issuing the writ of garnishment; and, from this fact, counsel for appellees urge that justice and fairness to our own citizens, as well as the harmonious and nondiscriminate application of our attachment laws, demand the approval of this doctrine by this court, rather than a recurrence to the doctrine to be found announced in our *Dooley, Chumley,* and *Nash Cases, supra.* Counsel for appellant take the position that *Harris v. Balk, supra,* is, in fact, based upon the "full faith and credit" clause of the Constitution of the United States, and that the rul-

ing is predicable only upon the Maryland attachment laws under which the character of assumption of jurisdiction present in the *Harris-Balk Case* is allowable, whereas under our status, in such cases, as applied in the *Dooley, Chumley,* and *NashCases,* an interpretation by which the courts of the United States are bound, garnishment is legally ineffective to subject a debt due a nonresident by reason of jurisdiction only, of our courts, over the debtor of that nonresident. We think this fairly states the contention of counsel for appellant, with an exception to be later mentioned.

We cannot concur in the view of counsel for appellant in their interpretation and in the effect of *Harris v. Balk.* Harris and Balk were residents of North Carolina, and Harris was indebted to Balk. Epstein, a resident of Maryland, was a creditor of Balk. Epstein, to collect his debt, sued Balk in Maryland, and a writ of garnishment was served on Harris, who was temporarily in Maryland. There was no personal service on or appearance by Balk. On the garnishee's answer admitting an indebtedness to Balk, the Maryland court condemned this debt to the satisfaction of Epstein's demand against Balk, and Harris paid the judgment. Subsequently Balk sued Harris, in the North Carolina courts, to recover the debt mentioned from Harris to him, and in defense thereof Harris pleaded his payment of this debt in obedience to the Maryland judgment. The Supreme Court of North Carolina held the plea unavailing, for the reason that the Maryland court acquired no jurisdiction to bindingly deal with the debt of Harris to Balk, since the situs of the debt was with Balk, the creditor, and hence that no property of Balk was, by the process of garnishment and its service alone on Harris, brought under the control of the Maryland court. It necessarily followed that the Maryland judgment pleaded was

invalid. The case passing up to the Supreme Court of
the United States, that court affirmed the jurisdiction
assumed and acted on by the Maryland court, and held,
as I understand the opinion, that garnishment was ef-
fectual to subject a debt due a nonresident of the state
issuing the process, and the consequent discharge of the
original debtor, where service of the writ could be had
on the original debtor (garnishee) ; the controlling con-
sideration being that Balk could have sued Harris, on
his debt, in the Maryland courts, if personal service on
him (Harris) could have been had. Necessarily that
court, in sustaining the Maryland court's jurisdiction
of Balk, affirmed the presence of property of Balk in
the custody of Harris, his debtor; for it was by that
means only that jurisdiction to bind Balk and to dis-
charge his debtor, as was held, was acquirable. The
affirmance of jurisdiction in *Stollenwerck's Case supra,*
is referable to the same fundamental considerations con-
trolling *Harris v. Balk,* since the only lead to that juris-
diction, as regarded Smith, the nonresident defendant,
was service on his debtor, the railway company. The
"full faith and credit" clause of the Constitution of the
United States, requiring effect to be given, in each state,
to the acts, records and judicial proceedings of every
other state, when properly authenticated under act of
Congress, is conditioned for application upon jurisdic-
tion of the court rendering the judgment of the parties
and subject-matter.—*Pennoyer v. Neff,* 95 U. S. 714, 24
L. Ed. 565. Hence a primary inquiry, when that pro-
vision of the Constitution is sought to be availed of in
respect of a judgment, is the essential and stated juris-
diction vel non of the court rendering the judgment.
This being true, the court, in *Harris v. Balk,* was invited
and required to determine the very question now under
consideration, in order to decide whether the Maryland

judgment should have been given "full faith and credit" by the North Carolina courts.

What is the result to be anticipated from *Harris v. Balk?* It is that this court, when a judgment of another state on garnishment is pleaded in bar of a recovery in our courts, must apply the law thereto in consonance with its announcement in *Harris v. Balk;* for that court is the final arbiter of questions pertaining to the "full faith and credit" clause of the Constitution. So, yielding to the superior authority in a case presenting that status, shall we stop there and yet continue to adhere to a theory of the law in this regard that, in its practical application, closes our courts to the suitor entitled to invoke their powers against a nonresident creditor whose debtor is within the process power of our tribunals and thereby sanction, whether the necessity be well or ill created, of discrimination in favor of persons holding judgments of other states and against those for whose benefit our courts are maintained? Such a course would be inexcusable in its inequality of effect and indefensible in its lead to two utterly inconsistent applications of the law of attachments; and since our statutes granting the remedy of attachment, embracing the levy thereof by garnishment, present no obstacle to the adoption of the theory and its consequences, approved in *Harris v. Balk,* I think we should do so without hesitancy, thus reaffirming *Stollenwerck's Case* in an essential feature of its ruling.

As indicated, the question with us is not one to be influenced by consideration of the familiar rule whereby the construction of a state's statutes, in respect of its attachment system, by the highest court thereof, binds the courts of the United States. The matter has passed that stage, and presents a condition to ignore which would necessarily place this court in the attitude of ig-

noring the right of citizens of this state who may well expect its tribunals to conserve these rights by all means within the legitimate power of these tribunals. The cases of *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565, and *Haddock v. Haddock*, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, are not, in my opinion, opposed to *Harris v. Balk*, as seems to be contended for appellant. We have recently, in *De Armon v. Massey*, 151 Ala. 639, 44 South. 688, stated our view of the scope and effect of the holding, as at present important in *Pennoyer v. Neff*. That case decides the extent, if we may so state it, of the power of the court on jurisdiction only acquired by the subjection of property of a nonresident to the control of the court proceeding in the premises, viz., that the jurisdiction obtained can only warrant the condemnation of the property seized, but not the rendition of a personal judgment against the nonresident defendant who does not appear and who is not personally served within the state. It is evident that *Pennoyer v. Neff* while covering an only correlated field to that touched by *Harris v. Balk*, is rather supporting of the conclusion of the latter case on the idea that the seizure under attachment processes of property of a non-resident clothes the tribunal with the power to bindingly dispose of it. The case of *Haddock v. Haddock* involved the consideration of the marriage relation and jurisdiction acquired and exercisable by a state court in the rendition of a decree of divorce. Obviously the questions determined as upon that status could not have bearing upon the inquiries presented in *Harris v. Balk* or in the case at bar. In *Chicago R. I. & P. R. R. Co. v. Sturm, supra*, the predecessor, in the principle now important, of *Harris v. Balk*, and also in the latter case, this quotation from 2 Pars. Const. (9th Ed.) p. 739, is employed, viz.: "All debts are payable everywhere, unless there be some

special limitation or provision in respect to payment; the rule being that debts as such have no locus or situs, but accompany the creditor everywhere, and authorize a demand upon the debtor everywhere."

The amended plea to the jurisdiction contains this averment: "* * * That the debt owned by said Davidson to defendants is payable to defendants at Louisville, in the state of Kentucky, and is not payable in the state of Alabama. * * *" In both the *Sturn* and *Harris v. Balk Cases* reference is made to the fact that the debts, respectively involved, were not affected by any special limitation or stipulation as to payment. Appellant's quoted averment is the basis for the contention, mentioned as not embraced in the general statement of appellant's insistence, that the qualification contained in the excerpt from Parsons employed in the *Sturm* and *Harris-Balk Cases* frees the case at bar from the influence of or control by those decisions. I construe the quoted averment to be merely that Davidson's debt to appellant was payable in Louisville, in the state of Kentucky. The latter phase of the averment, viz., that it was "not payable in Alabama," can only be taken as asserting the negative of the precedent allegation that it was payable in another state. This phase of the averment imports no intent of the parties, one a resident of this state, to deny to the other, a resident of Kentucky, recourse by right to the courts of this state to enforce his demand. If such was the effect of the stipulation, it would probably be held invalid as against public policy.—9 Cyc. p. p. 510 et seq., notes 69, 70.

To determine the full effect of *Chicago Ry. v. Sturm* and *Harris v. Balk,* in respect of the qualification upon which counsel for appellant relies, it is necessary to consider whether, notwithstanding the qualification stated, and, it may be said, reinforced by negation, in the opin-

[Shuttleworth & Co. v. Marx & Co.]

ions in each case, of any special limitation as to payment of the debt there in question, the reasoning set forth, as well as the conclusion attained, do not eliminate the qualification as a factor in casting the decisions. If the controlling consideration in those cases is, in principle, independent of the qualification stated, I think, responding as must be done to the necessity to now decide the question, that the qualification should be ignored.

In the *Sturm Case,* where the debt was payable generally, without special limitation, it was said: "The essential service of foreign attachment laws is to reach and arrest the payment of what is due and might be paid to a nonresident to the defeat of his creditors. To do it he must go to the domicile of his debtor, and can only do it under the laws and procedure in force there. This is a legal necessity, and considerations of situs are somewhat artificial. If not artificial, whatever of substance there is must be with the debtor. He and he only has something in his hands. That something is the res, and gives character to the action as one in the nature of a proceeding in rem. * * * To ignore this is to give immunity to debts owed to nonresident creditors from attachment by their creditors, and to deny necessary remedies. A debt may be as valuable as tangible things. It is not capable of manual seizure, as they are; but no more than they can it be appropriated by attachment without process and the power to execute process. A notice to a debtor must be given, and can only be given and enforced where he is. * * * The proposition that the situs of a debt is where it is to be paid is indefinite." After quoting the aforesaid excerpt from 2 Parsons, the opinion proceeds: "The debt involved in the pending case has no 'special limitation or provision in respect to payment.' It was payable generally, and could have been sued on in Iowa, and therefore was at-

tachable in Iowa. This is the principle and effect of the
best-considered cases—the inevitable effect from the na-
ture of transitory actions and the purpose of foreign at-
tachment laws. if we would enforce that purpose."

Bearing in mind that the present inquiry is not con-
cerned with the law controlling the rights of the parties
under their contract, as these rights may be affected by
the interposition therein of the law of the place of per-
formance of the contract or by special stipulation that
the laws of a given state or country shall apply thereto,
the writer can interpret the *Sturm Case* as affirming the
legal test of the right to garnish the debtor, within the
process power of the court, of a nonresident creditor
to be whether such creditor could sue and obtain service
upon his debtor in the state from the courts of which the
process of garnishment emanates. That test does not,
cannot, except arbitrarily, include as a sequence, oper-
ating as a condition precedent to the subjection and ap-
propriation of the debt, the place of payment of the debt,
for the reason that the courts of all the states are open
for the institution of transitory actions therein, regard-
less of where the contract giving rise to the right to sue
is to be performed, unless such contracts contravene
the public policy of the state.

*Harris v. Balk* is even more clear cut in the announce-
ment of the fundamental doctrine we deduce from the
*Sturm Case.* Therein it is said: "We do not see how
the question of jurisdiction vel non can properly be made
to depend upon the so-called situs of the debt or upon
the character of the stay of the garnishee, whether tem-
porary or permanent, in the state where the attachment
is issued.—*Blackstone v. Miller,* 188 U. S. 189, 206, 23
Sup. Ct. 277, 47 L. Ed. 439. If, while temporarily there,
his creditor might sue him there and recover the debt,
then he is liable to process of garnishment, no matter

where the situs of the debt was originally. We do not see the materiality of the expression 'situs of the debt,' when used in connection with attachment proceedings. If by situs is meant the place of the creation of the debt, that fact is immaterial. If it be meant that the obligation to pay the debt can only be inferred at the situs thus fixed, we think it plainly untrue. The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes. He is as much bound to pay his debt in a foreign state, when therein sued upon his obligation by his creditor, as he was in the state where the debt was contracted. We speak of ordinary debts, such as the one in this case. It would be no defense in such suit for the debtor to plead that he was only in the foreign state casually or temporarily. His obligation to pay would be the same, whether he was there in that way or with an intention to remain. It is nothing but the obligation to pay which is garnished or attached. This obligation can be enforced by the courts of the foreign state after personal service of process therein, just as well as by the courts of the domicile of the debtor.  *  *  *  We can see no reason why the attachment could not be thus laid, provided the creditor of the garnishee could himself sue in that  state and its law  permitted  the  attachment. There can be no doubt that Balk, as a citizen of the state of North Carolina, had the right to sue Harris in Maryland to recover the debt which Harris owned him. Being a citizen of North Carolina, he was entitled to all the privileges and immunities of citizens of the several states, one of which is the right to institute actions in the courts of another state. * * * The case [having reference to the *Sturm Case*] recognizes the right of the creditor to sue in the state where the debtor may be found, even if but temporarily there, and upon that right is built the further right of the creditor to attach the debt

owing by the garnishee to his creditor. The importance of the fact of the right of the original creditor to sue his debtor in a foreign state, as affecting the right of the creditor of that creditor to sue the debtor or garnishee, lies in the nature of the attachment proceeding. The plaintiff, in such proceeding in the foreign state, is able to sue out the attachment and attach the debt from the garnishee to his (the garnishee's) creditor, because of the fact that the plaintiff is really in such proceeding a representative of the creditor of the garnishee, and therefore, if such creditor himself had the right to commence suit to recover the debt in the foreign state, his representative has the same right, as representing him, and may garnish or attach the debt, provided the municipal law of the state where the attachment was sued out permits it."

Comment could add nothing to the clearness of the announcement in the quotation just made that the nonresident's right to sue his debtor within the process power of the foreign (to the creditor) state determines the jurisdiction of that state's court to condemn the debt and discharge the debtor, garnishee. In *Smith v. Gibson,* 83 Ala. 284, 3 South. 321, this court said: "The general rule is that every country has jurisdiction over all persons found within its territorial limits for the purposes of actions in their nature transitory. It is not a debatable question that such actions may be maintained in any jurisdiction in which the defendant may be found and is legally served with process. However transiently the defendant may have been in the state, the summons having been legally served on him, the jurisdiction of his person was complete, in the absence of a fraudulent inducement to same." This doctrine is approved in *Lee v. Baird,* 139 Ala. 526, 36 South. 720. So the appellant could have invoked the power of the

courts of this state to enforce his demand against David-
son, since the action would have been transitory, unless
the fact that the debt was payable in a foreign state (to
Alabama) rendered the action local. We know of no
authority giving such effect to such a provision for the
performance of a contract for the mere payment of mon-
ey. That character of action is necessarily deemed
transitory.—8 Words & Phrases, p. 7072 et seq.

The whole theory, as is seen, of the *Sturm* and *Harris-
Ball Cases* is that the debtor has the res, and that, if
the nonresident creditor might have pursued him and
might have reduced his claim to judgment, the creditor
of that nonresident may likewise, by attachment, sub-
ject the debt. The res, property of the nonresident cred-
itor, being so situate, with the debtor, jurisdiction of the
person of the debtor (garnishee) raises the other and
necessary jurisdiction to bind the nonresident creditor
by the judgment, and, when paid by the garnishee, to
discharge him. In 1 Wharton's Conflict of Laws (3d
Eo.) pp. 801-803, treating the qualification under con-
sideration, it is said: "The assumption of the Supreme
Court, in the case in which the doctrine was first declar-
ed by it, that there was no 'special limitation or pro-
vision in respect to payment,' but the debt was payable
generally, introduces a qualification, and suggests a dis-
tinction which it is difficult to follow through the cases.
The difficulty arises from the fact that it is not always
clear, when the court states that the debt was payable
in a certain state, whether it is meant that it was ex-
pressly payable there, or by legal implication payable
there. * * * It is difficult to perceive how the question
whether the debt is payable generally or is expressly
payable at some particular place outside of the state in
which the garnishment proceeding is instituted can
properly affect jurisdiction, since, in either case, suit

may be maintained thereon (by the creditor to whom it is owing, at least) at the debtor's domicile. There is a tendency upon the part of the later cases to ignore the distinction, and apply the doctrine to debts expressly payable in another jurisdiction; and, in view of the broad ground upon which the decisions of the Supreme Court rest, it is doubtful if that court will adhere to the qualification when a case involving a debt expressly payable out of the jurisdiction in which it is garnished is presented." In the notes on the pages cited in Wharton will be found the cases bearing on the text.—*Harris v. Balk* was, apparently, not before the editor when the quoted text was written; and that case affirmatively declares that, under Maryland laws, the character, whether transient or permanent, of the presence of the debtor, within the jurisdiction issuing the writ of garnishment, is immaterial, thus eliminating from the text quoted from Wharton the indicated (if so) limitation that the creditor's suit could only be brought against his debtor at the debtor's domicile.

The most serious consideration that suggests itself as leading to a maintenance, in this character of inquiry of the distinction or qualification stated, is the inquiry: If the place of payment is expressly, by the contract, fixed in a foreign (to the state of the court issuing the writ of garnishment) state, would the subjection, through such garnishment proceeding, of the debt be, in practical effect, an unwarranted destruction of one provision of contract, namely, the stipulated right and assumed duty to pay the debt at a given place, as, of course, the parties may lawfully do? If the stated inquiry is given a negative reply, it must be upon the theory, announced in *Harris v. Balk,* that the plaintiff in the garnishment proceedings is the representative of the nonresident defend-

ant, the creditor of the garnishee, and that acting for the defendant and in his stead in the collection of defendant's debt from the garnishee, to the end that that asset of the defendant should, in furtherance of the performance of the obligation of the defendant to pay his debt to the plaintiff, be applied to that purpose. The whole office of garnishment is to forestall the defendant's collection by him of the debt due him from the garnishee, and to apply it consistent with the defendant's obligation to satisfy the plaintiff's demand, is to anticipate the defendant by the judicial power to collect his debt from the garnishee and to deliver the proceeds to the defendant's creditor where a performance of his obligation would deliver it. In effecting this disposition of the debt due the defendant in the garnishment proceeding— a disposition entirely consonant with the defendant's duty to pay his debt to the plaintiff—the court enforces, never ignores, the lex contractus, controlling the rights of the parties, as distinguished from the lex fori, affecting the remedy merely; so that the real rights of the parties to the contract, between the garnishee and the defendant, are conserved, not sacrificed. Hence there is no escape from the conclusion that a stipulation for payment of the debt in a foreign state (to that issuing the process of garnishment) fulfills its entire legal purpose when it operates, if so in a given case, to subject the determination of the rights of the parties to that contract (between garnishee and defendant) to the law of the state in which the debt is expressly payable. In other words, unless the stipulation operates to clothe the contract with the law prevailing at the place of payment, and, if so, that law, if not contrary to the public policy of the state in which the garnishment proceeding is instituted, will be applied to the contract in the ascertainment and enforcement of the rights of the par-

ties thereto, then the designated place of payment is unimportant; and so the substance of the inquiry in hand is resolved into this: May the plaintiff in garnishment proceeding select, by the institution of his action, the forum in which to enforce, as the representative of the defendant, the defendant's demand against the garnishee, the res, belonging to the defendant, being with the debtor (garnishee) within the jurisdiction and under the control of the court issuing the process?

Obviously the only effect of the institution of such proceeding by the plaintiff having any appearance of injury to the defendant is the fact that, if brought at the domicile of the garnishee, he could claim such exemptions, against his debtor, the defendant, as the laws thereof allowed. Such laws have no extraterritorial effect and pertain to the remedy only.—*E. T. V. & G. R. R. Co. v. Kennedy*, 83 Ala. 462, 3 South. 852, 3 Am. St. Rep. 755. And, if the defendant was put to his direct action against his debtor, in the state of his (the debtor's) domicile, a like privilege to claim his exemptions would of course, be his. So that on the score of garnishment at the domicile of the debtor of the nonresident, there could be no prejudice to the nonresident creditor. Furthermore, and the inquiry suggests necessarily a negative response, may a nonresident creditor prevent the application, through process of garnishment, of his credits, his property, to the payment of his debt to the plaintiff in the proceeding in virtue of the fact that his debt from the garnishee is payable in a foreign state to that issuing process? If so he could, then garnishment as a remedy would in such cases wholly fail, because the writ could not be served on the garnishee, an essential to jurisdiction, at the place of payment. If so he could, the place of performance of a contract for the mere payment of money would control to deny jurisdiction in garnishment

proceedings, notwithstanding the court issuing the process had jurisdiction of the debtor, with whom was the res belonging to the defendant, and this result seems to me to be squarely antagonistic to both the *Sturm* and *Harris-Balk Cases.*

These views, expressed at perhaps an inexcusable length, would affirm the judgment of the city court, and are necessarily opposed to the doctrine of the *Dooley, Nash,* and *Chumley Cases.* Yet these cases need not be pronounced unsound, but rather they should be departed from in the construction and application of our garnishment laws, for the reason that the necessity to so depart from their doctrine is in consequence of the ruling of the Supreme Court and the principle in the *Dooley, Nosh,* and *Chumley Cases,* if assumed to be sound should yield to necessity.

There is no error in the record, and the judgment below is affirmed.

Affirmed.

TYSON, C. J., and DOWDELL, SIMPSON, ANDERSON, DENSON, and MAYFIELD, JJ., concur.