# Wooldridge *v.* Holmes.

### *Garnishment on Judgment.*

1. *Garnishment against stockholder, as debtor of corporation.*—A stockholder's unpaid subscription for stock, for which he has given his note to the corporation, is a legal liability, on which an action of debt or *indebitatus assumpsit* may be maintained by the corporation; and which may, therefore, be reached and subjected by garnishment at the suit of a creditor of the corporation.

2. *Same; transfer of note as collateral security.*—If a corporation transfers a stockholder's note for his unpaid subscription, as collateral security for a loan of money, and, the lender becoming bankrupt, the debt and note are sold by his assignee in bankruptcy; the purchaser at the sale, having obtained a judgment against the corporation, may by garnishment subject the debt due by the stockholder, although he might also maintain an action on the note.

Appeal from the City Court of Montgomery.

Tried before the Hon. Thos. M. Arrington.

The appellants in this case, Oscar Wooldridge and others, suing for the use of H. W. Clark, obtained a judgment in said City Court, at the February term, 1881, for $32,293.65, against the Masonic Temple Association, a private domestic corporation; and sued out process of garnishment against George B. Holmes and others, as the debtors of said corporation. Wooldridge *et al.* were the assignees in bankruptcy of

[Wooldridge v. Holmes.]

the Southern Life Insurance Company, of Memphis, Tennessee, which had been adjudicated a bankrupt; and they had recovered a former judgment, as such assignees, against the Masonic Temple Association, on a debt for money loaned. This debt was evidenced by the notes of the Masonic Temple Association, executed under powers conferred by its charter; and the notes of said Holmes and others, given for their unpaid subscriptions for stock, were also transferred as collateral security for the loan. Afterwards this judgment was sold, with the notes held as collateral security, by the assignees in bankruptcy, and was bought by M. P. LeGrand, who sold and transferred them to said H. W. Clark; and this judgment was the cause of action on which the subsequent judgment was rendered. On these facts, the plaintiffs asked for judgment against the garnishee on his answer, which the court refused to grant; and an issue being formed between the parties, the jury returned a verdict for the garnishee, under the charge of the court. The refusal to render judgment for the plaintiffs on the answer, and the judgment discharging the garnishee, are now assigned as error.

TROY, TOMPKINS & LONDON, for the appellants, cited *Duval v. McLoskey*, 1 Ala. 108; Morawetz on Corp., §§ 575, 589, 599; Jones on Pledges, §§ 600, 663, 681; *Railroad Co. v. Whitney*, 39 Ala. 468; *Hawks v. Hinchcliff*, 17 Barb. 492; *Bingham v. Rushing*, 5 Ala. 403; *Curry v. Woodward*, 53 Ala. 371; *DeMony v. Johnson*, 7 Ala. 51; *Henry v. Murphy*, 54 Ala. 256; *King v. Elliott*, 9 S. & M. 428.

SAYRE & GRAVES, *contra.*—Clark had the possession of the notes, and such a legal title as would have maintained an action on them; and he can not collect them by process of garnishment.—*Henderson v. Gold Life Ins. Co.*, 72 Ala. 38; *Jones v. Crews*, 64 Ala. 368; *Russell v. Hester*, 10 Ala. 535; *Ware, Murphy & Co. v. Russell*, 54 Ala. 43; *Powell v. Henry*, 27 Ala. 612; *Winslow v. Bracken*, 57 Ala. 368; *Hirchsfelder v. Mitchell*, 54 Ala. 419; Colebrooke Col. Securities, §§ 1, 90, 113, 154.

STONE, C. J.—The Masonic Temple Association, a corporation, made sale of its capital stock, and Geo. B. Holmes became the purchaser of twenty shares, amounting to one thousand dollars. Payment for the shares was secured by promissory notes, of which three remain unpaid, amounting to three hundred dollars, with interest. The Masonic Temple Association borrowed money from the Southern Life Insurance Company of Memphis, Tennessee, another corporation, and, among other securities, placed Holmes' notes in its custody, as collat-

[Wooldridge v. Holmes.]

eral security for the payment of the loan. The loan has never been repaid; but, after exhausting other securities, a large balance remains unpaid. The Southern Life Insurance Company was adjudged bankrupt, and Wooldridge and others were appointed its assignees. Under a decree of the court in bankruptcy, the unpaid balance of the debt, together with the collaterals, was sold, and one L. became the purchaser. The paper evidences of the debt, and the said collateral securities, were turned over to him. He subsequently sold and transferred them to H. W. Clark. Clark then brought suit in the names of the assignees, for his use, against the Masonic Temple Association, and recovered judgment for a large sum,—over thirty thousand dollars. He made the statutory affidavit, and sued out process of garnishment against Holmes. The answer and other evidence show that Holmes still owes the notes, and that Clark held them under the circumstances disclosed above when the garnishment was sued out, and when the trial was had in the City Court. The garnishee was discharged; and the sole question is, whether, under the circumstances, the debt of Holmes can be collected by garnishment in this suit.

If there had been no hypothecation of the notes as collateral security by the Masonic Temple Association, there can be no question that garnishment would lie. Holmes clearly owes the debt; it is a legal, not an equitable liability, and can be enforced in an action of debt, of *indebitatus assumpsit.—Henry v. Murphy*, 54 Ala. 246; *Winslow v. Bracken*, 57 Ala. 368; *Jones v. Crews*, 64 Ala. 368; *Henderson v. Ala. Gold Life Ins. Co.*, 72 Ala. 32; Drake on Attachment, §§ 457, 463, 544.

It can not be disputed, that, under our statute, which allows the beneficial owner of a contract for the payment of money to sue and recover in his own name, Clark could have maintained an action on the Holmes notes.—Colebrooke on Collateral securities, §§ 1, 90, 113, 154. He had such lien on, and right to the notes and their proceeds, as that no one could deprive him of them, without paying the debt for which they stood pledged. From these undisputed postulates it is contended, that garnishment, or trustee process, as it is known in other States, can not reach or condemn the liability, as a debt due to the Masonic Temple Association. There are authorities which hold, that an attaching creditor can constitute himself trustee or garnishee, and condemn to the payment of his demand a debt due from himself to his debtor.—*Lyman v. Wood*, 44 Verm. 113. We do not think them sound.—*Belknap v. Gibbons*, 13 Metc. 471; *Braisdell v. Ladd*, 14 N. H. 129; *Hoag v. Hoag*, 55 N. H. 172.

But, does it follow from the principles above stated, that this suit can not be maintained? The ownership of collateral pa-

per, or of a chattel pledged, is not in the creditor. He holds them as the agent or trustee of his debtor, to be collected or utilized for the latter, in discharge of the principal debt, and to be surrendered whenever such principal debt is paid. *Hawks v. Hinchcliff*, 17 Barb. 492. He has but a lien upon them, and who besides himself has any interest in the assertion of that lien? In *Swett v. Brown*, 5 Pick. 178, the facts were, that Brown was indebted to Peirsons, and left the State. Peirsons' agent attempted to obtain security, and did obtain possession of some of Brown's furniture, which he held, and claimed the right to hold, as security for Peirsons' benefit. Swett thereupon sued Brown, and the agent who held the furniture was summoned and served as trustee,—corresponding to our process of garnishment. On the next day, the furniture was attached at the suit of Peirsons, and taken from the possession of the agent, who had thus been sought to be charged as trustee, in Swett's suit. It was contended for Peirsons, that his agent had first and rightfully acquired possession of the furniture, and that he had thereby acquired a lien prior and paramount to that asserted by Swett. The court, PARKER, C. J., held, that the agent did not obtain possession of the furniture from any one authorized to surrender it. The court added: "But suppose him (the agent) to have acquired a lien on behalf of Peirsons, he was nevertheless liable to the process; so that the plaintiff's attachment would hold, and then, upon the surrender of the lien, the attachment was disembarassed of the claim of Peirsons, whose subsequent attachment can not avail against that previously made by the plaintiff. The attachment of the furniture on the suit of Peirsons must be presumed to have been made by consent of the respondent, and he thus relinquished the lien which he claims to have held by delivery of the goods as a pledge." In *Coble v. Nonemaker*, 78 Penn. St. 501, Coble held a chattel mortgage on merchandise, executed by one Eves, to secure payment for the merchandise. Eves sold the merchandise to Nonemaker, who gave his note for the purchase-money. Nonemaker, when he made the purchase, knew of the debt to Coble, and of the mortgage to secure its payment. Coble attached, and summoned Nonemaker as trustee or garnishee. It was held the action would lie. The court, after remarking that, "undoubtedly, the most obvious remedy of the plaintiff would have been an action of replevin," said: "It can not be questioned, that the plaintiff could have maintained this foreign attachment, if the effort to transfer the title had not been attempted. He could have waived the right to seize and sell the goods, which the mortgage conferred." The case of *Whittaker v. Sumner*, 20 Pick. 399, was as follows: Property was placed in pledge as security for a debt due. The

[Wooldridge v. Holmes.]

pledgor afterwards conveyed the property by assignment to another. Of course, the assignee took subject to the pledge, and could only acquire an absolute title to the property by redeeming the pledge. At this stage an attachment was sued out by a stranger, and the property being pointed out by the pledgee, it was seized under the attachment. The assignee thereupon sued for the conversion of the property, and it was contended in defense that the pledgee had paramount right to the possession, until the debt, for the security of which it had been pledged, was paid. The defense was disallowed, the court holding that, although the assignee acquired by the assignment only a qualified right to the property, subject to the pledge, yet, when the property was pointed out for levy by the pledgee, he thereby waived and forfeited his lien, and the assignment took effect as a transfer of a complete title.

As we have shown above, Clark had the right to sue on the Holmes notes, by virtue of his possession and the interest he had in their collection and proceeds. They were not absolutely his property. . He had but a lien on them. When collected, their proceeds were to go in exoneration, *pro tanto*, of the Masonic Temple's indebtedness, now the property of Clark. So far as any right disclosed by this record informs us, no one except Clark is interested in enforcing the lien. Without approving all that is said in the authorities collated above, we may safely assume that Clark had the unquestioned right, if he chose to take the risk, of waiving his lien on the notes, and proceeding for their condemnation as debts due to the Masonic Temple Association. He thereby neither increased nor varied the nature or extent of Holmes' liability. He only exposed himself to the possibility of an intervening lien or transfer, which would dominate his attachment lien. None such is asserted. And Holmes, paying in the garnishment suit, will be no more exposed to a second suit or recovery, than if he paid voluntarily, or in an ordinary suit on the note. One recovery and collection by Clark, even in garnishment, will bar any suit he might bring on the notes.

To illustrate our views, suppose the Holmes notes had been held in pledge, or as collaterals, by an outside party, and Holmes, answering as garnishee, had disclosed the fact that he had been notified of such holding. Clark would have had the right, under our statutes, to have notice issued and served on such outside claimant, requiring him to come in and contest the *bona fides* of the transfer. Being so notified, suppose the avouched transferree failed to come in and assert his claim. The result would necessarily be a judgment against the garnishee. Why? Because the garnishee is shown to be indebted in that form which will maintain debt, or *indebitatus*

[McAbee v. Parker.]

*assumpsit;* the debt has been due and payable to the defend-ant in judgment or attachment, and no outsider asserts claim to the ownership of the demand. Is it not equally clear, in this case, that Holmes owes a debt which, in form, will main-tain debt or *indebitatus assumpsit;* that in its origin it was due to the Masonic Temple Association, and that no outsider has asserted, or can assert ownership of said demand?

On the facts shown in this record, judgment should have been given against the garnishee.

Reversed and remanded.

CLOPTON, J., not sitting.