# Maas & Schwarz *v.* Montgomery Iron Works.

*Action on Common Counts, for Price of Goods Sold.*

1. *Promise to "give acceptance" for price of goods sold to another.* S. desired to buy an engine and boiler from plaintiff, and agreed with them as to price to be paid; but they declined to sell on his responsibility, and he said "he thought he could give defendants' acceptance at ninety days," they being his commission-merchants. Thereupon defendants wrote to plaintiff: "We have been showing S. some favors;

[Maas & Schwarz v. Montgomery Iron Works.]

and if your outfit is fully guaranteed by you, and you will take our ninety days' acceptance for it, we will aid him in the purchase." Plaintiff replied: "We accept the $250 offered, with your ninety days' acceptance, but would prefer shorter time if you and S. can arrange it." Defendants, answering, said: "It would not be convenient to make the payment shorter time than ninety days. Our paper, however, if you wish, you can readily use. You can make him the shipment, comply with your contract with him, and paper will be forthcoming." The machinery was delivered, but no draft or acceptance was given or tendered for the price. *Held*, that defendants' promise was, not to accept the draft of S. when presented to them, but to give their own acceptance for the price on delivery of the machinery.

2. *Common counts; when recovery may be had under.*—The general rule is, that the plaintiff must declare on a special agreement so long as it remains executory. and can not recover on the common counts; but, when the contract has been fully executed on his part, and nothing remains to be done on the part of the defendant but the payment in money of the stipulated amount, he may declare, at his election, either specially on the contract, or generally on the common counts; as where goods have been sold and delivered on defendant's promise to give his acceptance at ninety days for the price, but has failed to do so, an action on the common counts may be maintained for the agreed price after the expiration of the ninety days.

APPEAL from the City Court of Selma.

Tried before the Hon. JONA. HARALSON.

This action was brought by the "Montgomery Iron Works," against Maas & Schwarz as partners, and was commenced in June, 1888. The complaint contained two counts, each in common form claiming $250 due by account on the 15th December, 1886, for merchandise, goods and chattels sold by plaintiff, on the 8th September, 1886, to W. J. Stoddard, as alleged in the first count, at the request of the defendants; or, as alleged in the second count, sold to the defendants themselves. The defendants pleaded—1st, the general issue; 2d, the statute of frauds; 3d, failure of consideration; and issue was joined on all of the pleas. On the trial, a jury being waived, the court rendered a judgment for the plaintiff; to which judgment the defendants duly excepted.

On the trial, as appears from the bill of exceptions, Capt. Peyton Bibb, who was the president of the plaintiff company, testified in its behalf as follows: "In the Fall of 1886, I was plaintiff's secretary and general manager, when Dr. W. J. Stoddard called to buy an engine and boiler. I priced him a second-hand engine and boiler. He looked at them, and we agreed on the price at $250. I required security. He said he thought he could give the acceptance of the defendants, at ninety days, for said sum, on the shipment of the engine and boiler; and I told him that I would overhaul it, and see that it was in good order. This was about the

[Maas & Schwarz v. Montgomery Iron Works.]

first of September." He further testified that the following letters, which were produced, afterwards passed between plaintiffs and defendants:

September 6th, 1886, defendants wrote: "Dr. W. J. Stoddard, of Benton, spoke to us in reference to the purchase of steam outfit, for which he is to pay $250. We have been showing him some favors; and if your outfit is fully guaranteed by you, and you will take our ninety days acceptance for it, we will aid him in the purchase." The plaintiff replied September 7th, acknowledging the receipt of said letter, and adding: "We have overhauled the engine and boiler, and put them in good running order. They are second-hand, and cost new about $600. They have been used but little, and we guarantee them fully. We accept the $250 offered, with your ninety days acceptance, but would prefer a shorter time, if you and Dr. S. can manage it. We can ship engine and boiler complete on Monday, Sept. 13th." Defendants replied, September 8th, saying: "Dr. Stoddard's wants and condition are such that it would not be convenient to make the payment in shorter time than ninety days. Our paper, however, if you wish, you can readily use. You can make him the shipment, comply with your contract with him, and paper will be forthcoming." The plaintiff replied to this letter on Sept. 10th, promising to ship the boiler and engine on the next Monday; and again wrote on October 26th: "We shipped Dr. Stoddard the boiler and engine, and sent a man who put it up in running order. Please make out the acceptance from Oct. 4th, the date engine was ready for work." Defendants wrote on Oct. 29th: "We have your favor, and are ready at any time to arrange the matter; but Dr. S. writes us there is some trouble with the machinery, and it may therefore be well to await result; not that we care as to time, except that we are terribly, and at our own cost and inconvenience, delayed from making any collection from the place, but because we could not well arrange it with the consent and satisfaction of the Dr. All will be arranged, however."

The price of the engine and boiler was never paid, nor was any note, draft or acceptance ever given for it, either by Stoddard or defendants. No further correspondence ensued between plaintiff and defendants, but several letters passed between plaintiff and Stoddard, about the condition of the engine, repairs, &c.; and plaintiff sent two machinists, at

different times, to inspect and repair it if necessary, as stated more particularly in the opinion of the court.

The judgment of the court below is assigned as error.

WHITE & WHITE, for appellants.—(1.) The defendants' promise was to "give their acceptance"—that is, to accept the draft of Stoddard, the purchaser; and there is no pretense that they ever refused to accept, or even that it was presented to them for acceptance.—2 Rand. Com. Paper, §§ 560, 597, 618; *Kenan v. Holloway*, 16 Ala. 53. (2.) Whatever may be the true construction of the promise, no recovery can be had under the common counts.—*Jonas v. King*, 81 Ala. 286-7.

S. W. JOHN, *contra*, cited *Bates v. Starr*, 6 Ala. 697; *Scott v. Myatts & Moore*, 24 Ala. 493; 2 Greenl. Ev. § 104; *Holloway v. Talbot*, 70 Ala. 389; *Sprague v. Morgan*, 7 Ala. 952; 10 Ala. 332; 54 Ala. 172; 66 Ala. 101.

CLOPTON, J.—The plea of the statute of frauds having been abandoned, the general issue and the failure of consideration are the only pleas filed to the action, which was brought by the appellee to recover the price of an engine and boiler shipped to W. J. Stoddard at the request of appellants. The presiding judge, to whose decision the facts were submitted without the intervention of a jury, found there had been a compliance on the part of the plaintiff with the agreement with Stoddard to put the engine and boiler, which were second-hand, in good running order. Notwithstanding the testimony may be regarded conflicting in some respects, on consideration of the entire evidence, we concur in this conclusion. Plaintiff sent a competent machinist to put up the machinery, who testifies that he had no difficulty in running it, and left it in good condition. A short time afterwards, the person placed in charge by Stoddard attempted to run it and to gin cotton, without succeeding in getting the inspirator to work so as to force sufficient water in the boiler. The person operating it attempted to fix it, and was stopped by Stoddard, because, as he says, he did not appear to understand it, and something wrong might be done. A machinist, who was sent for by him, examined the machinery, found the boiler leaking, did some work on the engine, such as fixing connecting rod brasses, and some packing and tightening bolts, but refused to do any on the boiler. After

this it was used for some time. Stoddard still not being satisfied, plaintiff sent another machinist, who worked on the engine and boiler. They were thereafter used to gin, not only the crop of that year—1886—but also the crop of the two succeeding years, without any repairing, so far as shown, except to put in new tubes in 1888. After two crops had been ginned, plaintiff proposed to take the machinery back, release Stoddard and the defendants, and remove it without expense to them or either of them. This proposition was rejected. Its rejection, and the long use of the engine and boiler, manifest that plaintiff had put them in a condition reasonably suitable to the purposes for which they were purchased. Though there is some testimony tending to show that the engine had not been run sufficiently long after it was first put up to produce injury, the inference from the entire evidence is, that the subsequent leaking and the defective working of the inspirator were caused by inexperienced and unskillful handling on the part of the persons placed in charge, who did not understand how to operate an engine; or, at any rate, that the last machinist sent by plaintiff put the engine and boiler in good running order.

The correspondence set forth in the bill of exceptions constitutes the contract between plaintiff and defendants. Stoddard proposed to purchase, and plaintiff to sell the engine and boiler, at two hundred and fifty dollars, agreeing to put them in good running order. The price was agreed on, but plaintiff declined to sell on his responsibility, and required security for the purchase-money. A few days thereafter, defendants proposed in writing to give their acceptance payable at ninety days, if the engine and boiler were fully guaranteed. On being notified that the proposition was accepted, and that the machinery would be ready for shipment on the succeeding Monday, defendants wrote: "You can make him (Stoddard) the shipment, comply with your contract with him, and the paper will be forthcoming." Plaintiff shipped and put in place the engine and boiler, and so informed defendants, requesting them to make out the acceptance as of October 4, 1886, the time when the machinery was ready for work. The acceptance was never given.

Counsel insist that defendants committed no breach of their agreement, though there was a compliance on the part of plaintiff. The argument is, that the contract, when properly construed, was to accept the draft of Stoddard, and that presentation of the draft for acceptance, in a reasonable time,

is essential to constitute a breach of such agreement. This is the general rule, in the usual cases of agreements to accept a draft drawn or to be drawn. But the contract was not merely to accept the draft of Stoddard, or any other particular draft. Defendants were his commission-merchants. Occupying this position, and being necessarily interested in having the crop of cotton ginned, they proposed, in order to enable him to obtain the engine and boiler for this purpose, to *give* their acceptance for the agreed price, and promised, if plaintiff complied with the contract with Stoddard, that the paper should be forthcoming. The terms of the agreement imposed on defendants the duty to furnish the acceptance on plaintiff's compliance with the contract—the same as if they had agreed to give their promissory note.

It is further contended, that though there may have been a breach of the agreement, plaintiff can not recover on the complaint, there being no count declaring on the special contract. The complaint contains only two common counts—one for goods sold to defendants, and the other for goods sold to Stoddard at their request. The general rule is, that a plaintiff must declare on the special agreement, so long as it remains executory, on the ground that a promise will not be implied when a special contract is shown. But, he may declare specially on the contract, or generally on the common counts, at his election, when it has been fully executed on his part, and nothing remains to be done on the part of defendant but the payment in money of the stipulated amount.—*Jonas v. King*, 81 Ala. 285; 2 Greenl. Ev. § 104. Ordinarily, a plaintiff may recover on the common counts, when by the breach of a special agreement he becomes entitled to recover a sum *in numero*, or which can be rendered certain by mere calculation.—*Holloway v. Talbot*, 70 Ala. 389.

On plaintiff's requirement of security for the purchase-money, defendants proposed to give their acceptance payable at ninety days. They voluntarily fixed their relation to plaintiff, and, by agreeing to give their *acceptance*, promised to be directly and originally responsible. Their undertaking was not collateral to, nor to answer for, nor dependent upon, any default of Stoddard. So far as relates to plaintiff's remedy, they agreed to be an independent principal, though they may have been accommodation acceptors, and the relation between them and Stoddard that of principal and surety. Had the acceptance been given, the liability of defendants

would have been absolute, and after its maturity, plaintiff could have declared and recovered on the common counts, merely introducing in evidence the acceptance, without proof of notice of non-payment by the drawer, or demand of payment.

The promise of defendants comes within the principle, which is applicable when goods are sold to be paid for by a bill of exchange or note payable in the future. If the purchaser refuses or fails, in such case, to give the bill or note, the vendor may, after the expiration of the credit, bring an action to recover the price, using only the common counts. The claim of plaintiff became pecuniary and absolutely due after the expiration of the time during which the acceptance was to be current, and no duty remained but the payment in money of the price by the defendants, which is nothing more than the law would imply. As plaintiff was entitled to receive the money, giving the acceptance, after the expiration of the credit, would have been of no avail. The contract having been fully executed on the part of the plaintiff, and the action not having been commenced until the time of credit had expired, the common counts are sufficient.—*Anderson v. Anderson*, 4 Dana, 352; *Harrell v. Mills*, 21 Wisc. 90; *Vincent v. Rogers*, 30 Ala. 471; *Bates v. Starr*, 6 Ala. 697; *Brooks v. White*, 1 Bos. & P. New Rep. 329; *Hoskins v. Duperoy*, 9 East, 498.

Affirmed.