# Jos. Joseph & Bros. Co. v. Hoffman & McNeill.

## *Assumpsit.*

(Decided June 29, 1911. 56 South. 216.)

1. *Assumpsit; Action; Grounds; Counts.*—Where the contract has been fully executed by the plaintiff, and nothing remains to be done by the defendant except to pay the amount stipulated, an assumpsit on the common counts is proper, although the claim arose out of a special contract.

2. *Garnishment; Persons' Subject; Plaintiff.*—The rule is not recognized in this state that permits the plaintiff to make himself a garnishee in. his own action.

3. *Same; Nature of Remedy; Proceeding in Rem.*—A garnishment proceeding in a court of another state where a plaintiff may make himself a garnishee of his indebtedness to a non-resident defendant not personally served with process, and not appearing to defend, is a proceeding in rem.

4. *Same; Foreign Judgment; Constitutional Provision.*—Where a court of another state has jurisdiction and ascertains that a plaintiff, who has made himself the garnishee of his indebtedness to a non-resident defendant not personally served with process, nor appearing therein, is himself found indebted to the defendant in an ascertained sum, and that sum is reduced by the amount of the garnished indebtedness, thereby discharging any indebtedness from or liability of the plaintiff there to the defendant to the extent only of the sum condemned, this court is bound to observe and give effect to the judgment only so far as it is a judgment in rem. under the full faith and credit clause of the Constitution of the United States.

5. *Judgment; Process to Sustain; Personal Judgment; Garnishment.*—A court of another state which has jurisdiction to subject the indebtedness of the plaintiff there to the defendant to the satisfaction of the plaintiff's demand. on plaintiff's garnishment of himself, in his own action against the defendant, has no jurisdiction to render a personal judgment over against a non resident defendant, not personally served in the garnishment proceedings, and not appearing therein, and any such judgment is a nullity; the rule in

Jos. Joseph & Bros. Co. v. Hoffman & McNeill.]

such cases being to ascertain the amount of the plaintiff's demand, and then render judgment only condemning the property or indebtedness of the defendant to the satisfaction of the ascertained demand.

6. *Same; Foreign Judgment; Fraud or Misconduct.*—Where an action by a seller against a non resident buyer is instituted in this state before an action brought by the buyer against the seller was begun in another state, where it went to final judgment there, before the judgment in the action here was rendered, and there is no evidence of fraud in the proceedings in the other state, the mere fact that the buyer knew that complaint had been filed against him in this state, does not show fraud or misconduct in obtaining a judgment in sucn other state.

7. *Same; Conclusiveness.*—The rule that the first judgment rendered controls, whether the action in which it is reached be instituted before the other or not, applies where the first judgment is rendered in another state.

8. *Same; Matters Concluded.*—Where an action for damages for a breach of contract is brought in another state, and the plaintiff garnishees his own debt due to a non-resident defendant, who had not been served with process, and who does not appear, and takes a judgment in personam for an amount reduced by the amount of the indebtedness condemned, a finding by that court of a breach of the contract is not conclusive on tue issue of breach vel non of the contract declared on.

9. *Same; Discharge; Set Off.*—Where, in an action in this state, a plaintiff is shown to be entitled to a judgment for $2,517, for goods sold, and the defendant shows a right to recover $1,174, the amount of an indebtedness of plaintiff to defendant which was condemned in garnishment proceedings against the plaintiff as a defendant in another state, the judgment here should be reduced by setting off the indebtedness condemned by the foreign judgment, and hence, a judgment against a garnished fund of $2,000 in this state is excessive and erroneous.

10. *Court; Comity; Stay of Proceedings; Different States.*—Where a court of another state on an action brought therein is advised that the courts of this state in their jurisdiction has been first invoked by the parties, that court may, on the grounds of comity, stay its jurisdiction, but before judgment in the courts of this state, such action on the part of the court of another state is a matter of grace; and not the observance of a legal auty.

11. *Appeal and Error; Objection; Bill of Particulars.*—To be available on appeal, an objection to a bill of particulars as being too indefinite, should be taken at the beginning of the trial.

(Dowdell, C. J., and Mayfield and Sayre, JJ., dissent.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Assumpsit by Hoffman & McNeill against Joseph Joseph & Brothers Company,, a corporation. Judg-

ment for plaintiff and defendant appeals. Reversed and remanded.

SMITH & SMITH, for appellant. The court should not consider items of the account not on the bill of particulars as objection was made at the time the evidence was offered.—Section 5326, Code 1907, and cases cited. The burden was on the plaintiff to show a compliance on their part and the defendant's breach, and the amount due.—*Winter v. Pollak*, 166 Ala. 255; 16 Enc. P. & P. 174-9, and this burden must be carried according to the terms of the written orders given by defendant and accepted by plaintiff.—*Rice v. Schloss*, 90 Ala. 416; *Cook v. Malone*, 128 Ala. 664; *Winter v. Pollak, supra*. Even if it be conceded that plaintiff made out their prima facie case, the transcript of the proceedings and judgment of the court of common pleas of Hamilton county, Ohio, which was introduced in evidence, is a complete defense.—*Kohn v. Haas*, 95 Ala. 478; *Bogan v. Hamilton*, 90 Ala. 454; *Semple v. Glenn*, 91 Ala. 245; *Pete v. Hatcher*, 112 Ala. 514; *Fauntleroy v. Lum*, 210 U. S. 230. There was sufficient notice to the plaintiff in this suit of the garnishment in the foreign state.—*C. & C. Groc. Co. v. Coleman*, 125 Ala. 158; *Cohen v. Portland Lodge*, 81 C. C. A. 483. Under the Ohio statute, a person may garnishee himself in his own action against another, and this will be looked to in order to determine the law of Ohio.—*Norton v. Norton*, 43 Ohio State, 509; *Beckley v. U. S. S. & L. Co.*, 147 Ala. 195. This is a collateral proceeding and the judgment in Ohio is conclusive and entitled to full faith and credit.—*Sample v. Glenn, supra; White v. Simpson*, 124 Ala. 238. There is no merit in the contention that the Alabama garnishment law governs instead of the Ohio law.—*L. & N. v. Deer*, 200 U. S. 176. The judgment should be reversed,

and a judgment here rendered discharging the garnishment.—*Montgomery v. Merritt*, 61 Ala. 534.

Z. T. RUDOLPH, for appellee.    The proceedings in the Ohio court were not sound.—*Woolridge v. Holmes*, 78 Ala. 570; 14 A. & E. Enc. of Law, 809.   A plaintiff cannot garnishee himself in his own action.—Section 2171, Code 1896.   Where the law conflicts, our courts will determine in favor of its own statutes.—Minor Conflict of Laws, sec. 5, et seq.   The foreign judgment without further proof was not evidence of the existence of the debt on which the attachment issued.—*Moyer v. Lobengeir*, 28 Am. Dec. 723.   Plaintiff was entitled to recover on the common counts.—70 Ala. 389; 88 Ala. 328.

McCLELLAN, J.—On the trial, this cause was, by agreement, "submitted on the plea of the general issue, with leave on the part of the defendant to introduce evidence of any matters of defense it might have to the action as though specially pleaded, and that the plaintiff might offer evidence of any matter on rebuttal as though a special replication was filed."

The cause or causes of action were stated in the common counts.   This form of claim for a recovery arising out of special contract is well chosen when the contract has been fully executed on the plaintiff's part, and nothing remains to be done on the part of the defendant but payment of the amount stipulated.—*Holloway v. Talbot*, 70 Ala. 389; *Maas v. Mont. Iron Works*, 88 Ala. 328, 6 South. 701.

On May 22, 1905, July 11 , 1905, August 11, 1905, August 14, 1905, September 13, 1905, and October 9, 1905, respectively, the plaintiffs (appellees) sold to defendant (appellant) "scrap" metals of various kinds at stipulated prices.   Because of defendant's failure to

pay the stipulated price as and when plaintiffs conceived the contracts obliged defendant, plaintiffs instituted this action in the circuit court of Jefferson county, Ala., on December 1, 1905. The defendant was and is a nonresident of this state. Writs of attachment were issued and served in the action, and answers were made by the garnishees, among them Republic Iron & Steel Company which, according to the recitals of the judgment entry, admitted an indebtedness of $2,000 to the defendant. In this action it was ascertained on April 23, 1910, that defendant was indebted to plaintiffs in the sum of $2,547; and the indebtedness of the Republic Iron & Steel Company to the defendant (appellant) was condemned to its satisfaction.

On December 11, 1905, the Joseph Joseph & Bros. Company (defendant in this action) instituted its suit in the court of common pleas of Hamilton county, Ohio, against the plaintiffs in the suit at bar, for breaches of *thrce* several contracts of dates October 9, 1905, September 14, 1905, and August 11, 1905, respectively. The defendants (plaintiffs in our circuit court) being nonresidents of the state of Ohio, publication of notice to them was made as provided in the statutes of that state. Writs of garnishment were prayed and issued, and among those served therewith and answering thereto was the plaintiff (the defendant, appellant here). It confessed an indebtedness to the defendant (appellees, plaintiffs here) of $1,174.87. On June 27, 1906, the court of common pleas rendered a judgment, in solido, in favor of the plaintiff for $2,093.71, being the aggregate amount of damages claimed for the breaches declared on, with the interest, from December 1, 1905, included. The confessed indebtedness of plaintiff to the defendants was, by the judgment, appropriated and allowed as a credit on the judgment for $2,093.71 leaving

a balance in plaintiff's favor of $918.84, aside from costs.

It appears from the evidence (Statutes of Ohio, § 5530; *Norton v. Norton*, 43 Ohio St. 509, 525, 2 N. E. 348) set out in the transcript on this appeal, that under the laws of the state of Ohio garnishment lies against the plaintiff in action to subject debts, due by the plaintiff to the defendant, to the satisfaction of the demand for which the action is instituted. It also appears from other statutes of that state, admitted in evidence on the trial, that service by publication may be had in cases of nonresidence of that state.—Statutes of Ohio, § 5045 et seq. It further appears, from like character of evidence admitted on the trial, that attachment or garnishment is serviceable, in that state, to subject debts due, or to become due, nonresidents under the circumstances our statement indicates.

While the right of a plaintiff to make himself a garnishee in his own action was denied by this court in a proceeding unaffected by the laws of another state (*Woolridge v. Holmes*, 78 Ala. 568), yet the rule is, as indicated, recognized and applied in Ohio, Pennsylvania, and other states.—Rood on Garnishment, § 39, and notes.

The Ohio court is shown to have had jurisdiction to subject and appropriate the indebtedness of the plaintiff (there), to the defendants, to the satisfaction of the plaintiff's (there) demands as declared on in the court of common pleas. Where, however, the defendant in attachment or garnishment is not *personally* served and does not appear (as was the condition of the cause in the court of common pleas), the court is without power—without jurisdiction—to render a personal judgment over against the nonresident defendant therein.—*Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565;

*Cooper v. Reynolds,* 10 Wall. 308, 19 L. Ed. 931; *St.* *Clair v. Cox,* 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; *Freeman v. Alderson,* 119 U. S. 185, 7 Sup. Ct. 165, 30 L. Ed. 372; *Exchange Bank v. Clement,* 109 Ala. 270, 280, 281, 19 South. 814; *De Arman v. Massey,* 151 Ala. 639, 44 South. 688; *Sweeney v. Tritsch,* 151 Ala. 242, 44 South. 184; *Planters' Chem. Co. v. Waller,* 160 Ala. 217, 225, 49 South. 89, 135 Am. St. Rep. 93; *Shut-tleworth v. Marx,* 159 Ala. 418, 49 South. 83. The rule, in such cases, is to *ascertain* the amount of the plaintiff's debt or demand, and then *only* render judgment condemning the property or indebtedness to the satis- faction of the *ascertained* debt or damages.—*De Arman v. Massey, supra; Sweeney v. Tritsch, supra; Cooper v. Reynolds, supra.* Accordingly, the court of common pleas of Ohio was without authority or power to ren- der a personal judgment against the nonresident de- fendants therein; and hence that feature of its proceed- ings is a nullity everywhere.

The proceeding in the court of common pleas was in rem only. It warrantably ascertained that plaintiff garnishee (there) was indebted to defendants (there) in the sum found; and condemned that sum to the ben- efit of the plaintiff (there), accordingly discharging any indebtedness from or liability by plaintiff (there) to defendants to the extent, only, of the sum ($1,174) so condemned.—*Planters' Chem. Co. v. Waller, supra; Shuttleworth v. Marx, supra;* and other authorities be- fore cited. And in accordance with the "full faith and credit clause" of the Constitution of the United States, we are bound to observe and give effect to that judg- ment of the Ohio court having jurisdiction to deal with the res. In this instance jurisdiction of the Ohio court to so appropriate the mentioned admitted indebtedness

Jos. Joseph & Bros. Co. v. Hoffman & McNeill.]

appears from the evidence admitted on the trial of the case at bar.

Notwithstanding this action was instituted *before* the action in the court of common pleas of Ohio was begun, the proceedings there progressed to finality *before* the judgment in the cause at bar was rendered. We see no evidence of fraud or collusion in or about the proceedings in the court of common pleas. As before indicated, the laws of the state of Ohio, radically different in that regard from our own, contemplate and allow the employment of attachment and garnishment as was done in its court of common pleas. The mere fact, if so, that the plaintiff in the court of common pleas of Ohio was aware that the complaint in this action, in Alabama, had been filed, is no predicate for the imputation to it (plaintiff there) of improper conduct. The courts of that state were open to that plaintiff; and the fact that the jurisdiction of our courts had been theretofore, even shortly, invoked, but had not progressed to judgment, in the premises, between the like parties, could not denude the resident of the state of Ohio of his *right* to invoke the existent jurisdiction of the courts of that stae.

*Comity* might have appealed to the Ohio tribunal had it been advised of the fact that the jurisdiction of the courts of Alabama had *first* been invoked.—11 Cyc. pp. 1017, 1018. But that, before judgment rendered in our courts, would have been a matter of grace and not the observance of a legal duty.

It was said in *M. & C. R. R. Co. v. Grayson*, 88 Ala. 572, 579, 7 South. 122, 124 (16 Am. St. Rep. 69), by way of approving quotation, supported by abundant authority, that "the *first judgment rendered* controls, whether the action in which it is reached be instituted before the other or not; and the rule applies where the first judgment is rendered in another state."

The contention is that the proceeding in the court of common pleas *necessarily* adjudged, and to that end had jurisdiction, that defendants had breached the contracts there declared on; and so upon the conception that there could be no basis for a condemnation of the indebtedness of plaintiff garnishee to the defendants without an adjudication, by that court, of a liability from defendants to plaintiff, for the breach or breaches of the contract or contracts declared on.

The scope and effect of the jurisdiction acquired with respect to a nonappearing and a not personally served nonresident defendant, as well as the nature of the proceeding, have been stated, according to the controlling doctrine of the before cited decisions. If the proceeding in the court of common pleas was given an effect whereby the breach or breaches declared on was or were bindingly adjudicated in conclusion, in that regard, of the defendant, it is evident that the process would operate beyond the jurisdictionally limited scope of the proceeding, would effect a result, against such a defendant, beyond the restricted jurisdiction so acquired to condemn the res, the indebtedness of the plaintiff garnishee to the defendants. Such an adjudication, if allowed against a nonresident defendant only constructively, by publication, served and not appearing, would, of necessity, comprehend judicial action in personam; an action not possible with respect to the rights of a defendant over whom the jurisdiction is restricted to the power to conclude his rights in the res.—Author, supra.

In *Exchange National Bank v. Clement*, 109 Ala. 270, 280-281, 19 South. 814, it was said: "The judgment rendered must correspond to the nature of the proceeding. Of necessity, it must ascertain and declare the amount of the debt, claim, or demand sought to be enforced by

the attachment; and this must be ascertained and declared in the same mode and form as if the suit were in personam. There must follow a condemnation of the property attached, or of the effects garnished, and the judgment may be enforced by any appropriate process pertaining to the court. Speaking of the judgment, its operation and effect, it was said by Miller, J., in *Cooper v. Reynolds, supra:* "The judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the property attached is exhausted. No suit can be maintained on such a judgment in the same court or in any other, nor *can it be used in evidence in any other proceeding not affecting the attached property;* nor could the costs in the proceeding be collected of the defendant out of any other property than that attached in the suit.'" (Italics supplied.) The nature of the proceeding in the court of common pleas and the restricted jurisdiction acquired thereby lead, with certainty, to the conclusion that the phase of the finding by that court of breach or breaches of the contract or contracts there declared on did not, could not, conclude the not served and nonappearing nonresident defendants upon the issue of breach vel non of the contracts declared on.

The consequence, upon the concrete case, is that the plaintiff in the cause at bar must, to be entitled to a judgment against the defendant, assuming the pleading by defendant of the judgment of condemnation of the court of common pleas of the sum (indebtedness) of $1.174.87, show a right to recover, under their complaint in this action, a sum greater than $1,174.87, and the measure of their recovery must correspond to the excess above that sum ($1,178.87). If it be assumed

37—173

Jos. Joseph & Bros. Co. v. Hoffman & McNeill.]

that the trial court was correct in its finding of the amount for which defendant was liable to plaintiff in this action, that amount should have been tolled by the amount of the indebtedness ($1,174.87) condemned by the court of common pleas. In this respect the judgment appealed from is erroneous, and, accordingly, the appropriation, through the judgment against the garnishee of the defendant's indebtedness from its Alabama debtor, was, on the assumption stated, excessive, to defendant's prejudice.

The several contracts, between the parties · as evidenced by the several letters, required, under the evidence in this bill, the defendant to pay the "balance" for the materials when it was "unloaded." We understand the trial court to have so interpreted the engagements in this respect.

The bill of particulars furnished may have been indefinite. The use therein of the term "cars" evidently referred to their contents, and consisted, as the evidence shows, with the practice of so describing their contents. If the bill was merely indefinite, the objection should have been taken at the beginning of the trial.

The view taken of the case is so different from that prevailing below, we think the adjustment of the rights of the parties litigant will be better conserved by remanding the cause, instead of finally determining it here.

Reversed and remanded.

SIMPSON, ANDERSON, and SOMERVILLE, JJ., concur. DOWDELL, C. J., dissents.

MAYFIELD, J.— (dissenting.)—This is really an anomalous case. The facts are substantially as follows:

Two residents of Birmingham, Ala., sold junk to a corporation of Cincinnati, Ohio. It is conceded that the Ohio corporation owed the Alabama parties a balance due as for the purchase price of the junk, though there was some difference as to the exact amount. The Alabama parties sued the Ohio corporation, in the courts of Alabama, to recover this balance due. The Ohio corporation pending the suit, and before final judgment, went into the courts of Ohio, and there sued the Alabama parties for a breach of contract in the sale of the junk. The only service had, or attempted to be had, upon the Alabama parties, was that the Ohio corporation summoned itself as garnishee, trustee, and debtor of the defendants. The corporation was therefore the only party in court, or attempted to be brought in. It was the plaintiff and the garnishee; and as trustee of the defendants' property (the debt it owed the defendants) it represented the defendants. This trinity of parties then proceeded to take a trinity judgment—one in favor of the corporation against the defendants, one ,n favor of the corporation and against the corporation itself as garnishee, and the third in favor of the corporation and against the defendants, for the difference between the other two judgments. In other words, the first two were set off one against the other, and the third was a judgment over for the difference; but all three judgments were rendered in one and the same decision and suit, and appear to have been rendered simultaneously. The Ohio corporation then obtained a certified transcript of the proceedings in the Ohio court, and brought it back to the Alabama court, setting up the Ohio proceedings as a defense to the suit in the Alabama court. The trial court in Alabama declined to recognize, as a defense, the judgments in the Ohio proceeding, and a trial was had upon the merits,

the plaintiff obtaining a judgment apparently for the full amount due. The Ohio corporation appealed to this court, and this court holds that the trial court erred in declining to allow the judgment of the Ohio court as a defense; that while the judgment over against the defendants was not binding, the judgment against the garnishee was; that it was paid by being set off against the main judgment, and it was therefore a defense pro tanto to the suit in Alabama.

To this proposition I cannot give my assent for the following reasons: The trinity judgment in the Ohio court was not binding or conclusive upon the defendants for any purpose or any amount. So far as they are concerned the judgment proclaimed its own invalidity. To give it force and effect against the nonresident defendants is to deny due process of law. The Ohio judgment, introduced in the Alabama court, showed upon its face that it was not only an attempted fraud upon the rights of the plaintiffs, but a palpable and inexcusable attempt to defeat and evade the jurisdiction of the Alabama court.

On abstract principles, it seems clear to me that to allow a plaintiff in attachment against a nonresident defendant to garnish himself as a debtor, for the purpose of conferring jurisdiction upon the court, and thus represent three contending parties, is to permit a distortion of the process of garnishment; and that such a proceeding readily suggests some sinister or ulterior purpose. If two parties owe each other, the two debts offset each other as far as they go, and whenever the owner of one sues the other party, all courts allow the other to set off his debt.

In the concrete case, this record, to my mind, shows that the proceedings in Ohio were for no other purpose than to defeat the Alabama suit. The Ohio corporation

being sued in the Alabama court, it could have there pleaded set-off or recoupment, and have obtained judgment over against the Alabama plaintiffs, if entitled thereto; but, instead of doing this, it institutes another suit, as to the same matter, in Ohio, by summoning itself as garnishee, and is thus made the only real party in court, and therefore, in a purely ex parte proceeding, it takes judgment against the Alabama plaintiffs for any amount desired—only being certain to take it for more than it owes the Alabama parties; then takes judgment against itself for itself, and applies this judgment in part payment of its judgment against the Alabama parties, and then has judgment over for the difference. It then hastens back to Alabama and says to the Alabama plaintiffs and the Alabama court: "Since the last continuance, and without your knowledge or consent, I have had this matter all settled and adjudicated by the court of my own state, and here is a certified copy of the proceedings, which is an end to this Alabama suit."

Is it possible that such a proceeding can be valid, and binding upon the Alabama court and parties? This court holds that it is not conclusive of nor binding upon the Alabama parties, as to the full amount of the indebtedness due from the Ohio corporation, nor conclusive of the liability vel non of the Alabama parties to the Ohio corporation; but that it is binding and conclusive as to the extent of the judgment rendered against the garnishee, and that it has been paid and satisfied by crediting it upon the judgment against the defendants—in other words, that the amount of the judgment against the garnishee has been properly applied to the satisfaction of the Ohio corporation's claims against the Alabama defendants, and that such corporation cannot be compelled to pay it again.

I know that every state possesses exclusive jurisdiction and sovereignty over all persons and property within its territory, and hence has the power to determine, for itself, the civil status and capacity of its inhabitants, and to regulate the manner and conditions upon which property situate within its territory may be acquired, enjoyed, or transferred; but a corollary of this proposition is that no state can exercise jurisdiction or authority over persons or property without its territory.—Story's Conflict of Laws, c. 2. Mr. Story says that any exertion of a state's authority beyond its own territory is a mere nullity, and incapable of binding such persons or property in other tribunals.

It is true, as is said by the Supreme Court of the United States, in the case of *Pennoyer v. Neff,* 95 U. S. 71, 24 L. Ed. 565, that every state owes protection to its own citizens, and, when nonresidents deal with them, that it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents, to satisfy the claims of its citizens. It is in virtue of the state's jurisdiction over the property of nonresidents, situated within its limits, that its tribunals can inquire into the nonresidents' obligations to its own citizens, but inquiry can be carried only sufficiently far to control the disposition of this property. If the nonresidents have no property in the state there is nothing the tribunal can adjudicate. Hence, except so far as the nonresidents' property is within the state, any attempt to exercise jurisdiction over them is coram non judice. This follows upon the principle that the jurisdiction can be acquired only in one of two modes: One against the person, by service of process or voluntary appearance; and the other, by a procedure against the property of the defendant within the jurisdiction of the court. In actions against nonresidents, com-

menced by attachment, the judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No execution can issue upon it, and no suit can be maintained upon it, in the same court, nor in any other court; nor can it be used as evidence in any other proceeding not affecting the attached property. Not even the costs can be collected, from any defendant, out of any other property than that attached in the suit. The court cannot proceed unless the officers find some property of the defendant upon which levy of attachment can be made.

In the Supreme Court of the United States (*Pennoyer Case, supra*) it was said that if judgments obtained ex parte against nonresidents, upon mere publication, could be sustained as valid, they would be constant instruments of fraud and oppression; that judgments of all sorts, upon contracts and torts, real and pretended, would be given, upon which property would be seized, after the evidence of the transactions upon which they were founded (if it ever existed) had prished. The only theory upon which the court has ever upheld or given effect to substituted service by publication, is that in such cases the property is brought under the control of the court by seizure, or some equivalent act; and this theory rests upon the presumption that the property is in the possession of its owner, and that its seizure will inform him, and that he will then look after it. Such service is held to be given in all actions which are substantially proceedings in rem. It is said by the Supreme Court of the United States, in the above-mentioned case, that where the entire object of the action is to determine the personal rights and obligations of the defendants (and such was its undoubted object in this suit), constructive service upon a non-

resident is ineffectual for any purpose. Process from the courts of one state cannot run into another, and service by publication cannot create any greater obligation upon a nonresident. Process sent to one out of the state, and process published within it, are equally unavailing to establish any personal liability.

The foregoing propositions, as I understand the majority opinion, are not denied nor disputed. The majority hold, however, that the Ohio court, by virtue of the statutes of that state, acquired jurisdiction of the property of the defendants in that suit, by the plaintiff's summoning itself as garnishee, and that, having thus acquired jurisdiction, it could wipe out and destroy all liability of the plaintiff and the garnishee (who were one and the same person) to the defendants, who were nonresidents.

While Mr. Rood (in his work on Garnishment) seems rather inclined to the opinion that a plaintiff may summon himself as garnishee, and thereby reach a debt owing from himself to the defendant, as he is so cited in the majority opinion in this case, yet the contrary is expressly decided in the text, both in Cyc. and American & English Encyclopedia of Law. In Cyc. (volume 20, p. 986) it is said (and it is all that is there said upon the subject) : "The rule is well settled that the plaintiff in an action can neither summon nor charge himself as garnishee nor trustee in garnishment proceedings."

In said Encyclopedia of Law (volume 14 [2d Ed.] p. 809) it is expressed as follows: "The question has arisen whether the plaintiff may summon himself as garnishee, and thereby reach a debt owing from himself to the defendant, and though the decisions in regard to this point are in conflict, it is held by the best-considered cases, under statutes providing for summon-

ing as garnishees persons indebted, etc., to the defendant or providing for the attachment of indebtedness to the defendant, that the plaintiff cannot summon himself as garnishee. In a great many jurisdictions, however, the courts, following the principle of the decisions under the custom of London, which permitted a creditor to attach an indebtedness owing from himself, or property in his hands, have held that the plaintiff may summon himself as garnishee in regard to an indebtedness owing from him.

Mr. Drake, speaking on this subject in his work on Garnishment (section 543), says: "By the custom of London a plaintiff may by garnishment attach, in his own hands, money or goods of the defendant; but can a plaintiff charge himself as garnishee in respect to a debt due from him to the defendant? or, can several plaintiffs summon one of their own number with a view to so charging him?" The author answers the question by asking it; but adds that, in Pennsylvania and Ohio, it is held that it may be done, though in New Hampshire and Rhode Island it cannot; and that Massachusetts had intimated that it could not. And some cases are cited of Louisiana, Tennessee, and Vermont. But an examination of these cases will show that it has never been held that a debt due a nonresident defendant could be subjected by a resident plaintiff, in such manner or by such process; in fact, the contrary has been held by the courts of at least two of these states, to wit, Pennsylvania and Tennessee.

In the case of *Moyer v. Lobengeir*, 4 Watts (Pa.) 390, 28 Am. Dec. 723, it is held that a judgment against a garnishee in such case is not even prima facie evidence against the defendant when the plaintiff and garnishee, being the same, were thereafter sued by the defendant upon the debt sought to be subjected by gar-

nishment; that the judgment against the garnishee in such suit was not even prima facie evidence of the liability of the defendant to such plaintiff.

It was ruled by the federal court, in the case of *Rice v. Sharpleigh* (C. C.) 85 Fed. 559, that the statutes of Tennessee did not then, and never did, authorize a plaintiff to garnishee himself for a debt due a defendant.

Mr. Drake, speaking further on this subject (section 703b), said: "As we have seen, a plaintiff may by garnishment attach a debt due from himself to the defendant, but this will not authorize him to plead such garnishment, either in abatement or in bar, of a suit by the defendant against himself for that debt." Here the author seems to recognize such proceeding, but declares that it is not applicable nor binding in a case like the one under consideration.

The Supreme Court of Kansas, in the case of *National Bank v. Elliott,* 62 Kan. 764, 64 Pac. 623, 55 L. R. A. 353, holds that a plaintiff in an action can neither summon nor charge himself as garnishee therein, because a garnishment proceeding is an action by the plaintiff against the garnishee and defendant as parties defendant, and that the same person cannot be both plaintiff and defendant. A note to the report of this case in 55 L. R. A. 353, collects many authorities upon the subject.

The same was held by the Supreme Court of New Hampshire, in the case of *Hoag v. Hoag,* 55 N. H. 172, where the court decided that the same person cannot be both plaintiff and defendant, quoting from Dicey on Parties, § 220, "How can a man sue himself in a court of law? It is impossible to say a man can sue himself." In that New Hampshire case A. had brought suit against B., and summoned himself in the capacity of

administrator of the estate of C., and the court held
that it was a manifest absurdity to attempt to give
sanction to a proceeding whereby a party seeks to pro-
mote his own interests to the detriment and expense of
those he represents as trustee.

Chief Justice Shaw, in the case of *Belknap v. Gib-
bens*, 13 Metc. (Mass.) 473, speaking on the question
under consideration, said that the general tenor of the
law seemed to regard a garnishment suit as a suit be-
tween the plaintiff and the garnishee as a stakeholder
for the defendant; that it was, and should be, regarded
as an adversary proceeding, and should be brought
within the rule that a person cannot sue himself, nor
be both plaintiff and defendant in the same case. I do
not think the correctness of this proposition can be
doubted. This court, in the case of *Woolridge v.
Holmes*, 78 Ala. 568, speaking through Chief Justice
Stone, said: "There are authorities which hold that an
attaching creditor can constitute himself trustee or
garnishee, and condemn to the payment of his demand
a debt due from him to his debtor. * * * We do
not think them sound"—citing New Hampshire and
Massachusetts references. So this court is certainly
committed to the doctrine that no such proceeding
should be allowed, or, if allowed, that it is not valid.

While it is true that garnishment proceedings are
statutory, and therefore depend for their validity upon
the statutes of the various states, yet the statutes of
one state may authorize a proceeding which the stat-
utes of another would not. But the statutes of no state
can authorize a proceeding which would deprive a citi-
zen of any state of his property, without due process of
law. Both the federal and state Constitutions prevent
this. Nor will the courts of one state respect the stat-
utes of another, as to notice and service upon nonresi-

dents, which would have this effect. Such was express-
ly held by this court in the case of *Foster v. Glazener,*
27 Ala. 391, where it was decided that a summary rem-
edy given by statute of Georgia, to establish a lost note
or instrument, being predicated on a mere ex parte af-
fidavit, and without notice to the party to be affected
thereby, could be assimilated to a proceeding in rem,
because the court had the custody of neither the person
nor the thing; and that it was a settled principle of in-
ternational law, that every attempt, by any party or
state, to grant by its Legislature, jurisdiction to its
courts over persons or property not within its terri-
tory, is mere usurpation, and that all judicial proceed-
ings in virtue of it are void for every purpose; that the
courts of one country are not bound to regard as notice
everything which may be made such by the statutes of
another.

It has been well said by the highest authorities .in
England, and often quoted by high authority in Amer-
ica, that judicial power would be tyranny if it could be
exercised capriciously, without regard to the allega-
tions of the parties, or on testimony given by one party,
and which the other had no opportunity to contradict.
—4 C. B. 567; 8 C. D. 275. A court of one state, there-
fore, cannot, without violating the Constitution, trans-
cend the known rules of judicial action, though author-
ized by statutes so to do, by rendering an ex parte judg-
ment, because such course would not be due process of
law.

Mr. Webster, in his argument in the famous *Dart-
mouth College Case,* defined "due process of law" as "A
tribunal which hears before it condemns; which pro-
ceeds upon inquiry, and renders judgment only after
trial."

Jos. Joseph & Bros. Co. v. Hoffman & McNeill.]

So far as the courts of Alabama, or those of any other state, are concerned, it is wholly immaterial whether the proceeding of the Ohio court, in question, was attempted to be authorized or justified by statute or by common law. The attempt would be equally futile in both cases, for the reasons shown.

It was said by the Lord Chief Justice of England, in the case of *Collins v. Blanton* (reported in 2 Smith, L. C. 717), that "statute law is the will of the Legislature in writing; the common law is nothing but the statutes worn out by time; all law began by consent of the Legislature, and whether it is now law by usage or in writing, it is the same thing."

The judgment of the Ohio court must be given the same credence and the same effect by the courts of this state, whether it be authorized or sanctioned by the common law or by the statute law of Ohio. The "full faith and credit" clause of the federal Constitution does not require the courts of one state to give effect to the judgments and decrees of another, if, in so doing, the citizens of the one are thereby deprived of their property without due process of law. This would be to violate another provision contained in both the state and federal Constitutions, which is as binding as, and more sacred than, the other clause. A tribunal which decides, without hearing the defendant or giving him an opportunity to be heard, may claim the respect due a legislative or executive power, but cannot thereby give its decrees the weight of a judicial act. Hence, any judgment rendered without notice to or appearance of, the defendant, or a sufficient excuse for the want thereof, will be regarded as invalid by foreign courts. When the record of any court, whether superior or inferior, shows on its face, or by necessary implication, that it has proceeded without notice to the defendant

and without having acquired jurisdiction of his person or property, and without any sufficient excuse for the want of such notice or service, the presumption in favor of such judgment is at an end, and it may be impeached collaterally as absolutely void.—*Foster v. Glazener,* 27 Ala. 391; *Hollingsworth v. Barkour,* 4 Pet. 475, 7 L. Ed. 922.

A judgment which strips the defendant of his property without giving him an opportunity to be heard cannot be justified by the mere pretext that the proceeding is in rem and imposes no obligation upon him. This was held by the Supreme Court of the United States, in the case of *Boswell v. Dickerson,* 9 How. 336, 13 L. Ed. 164. The court was speaking in that case of an Ohio statute which authorized the institution of proceedings against an absent defendant by publication, for the purpose of compelling the specific performance of a contract, and said that if the statute were valid, which it seemed to doubt, it could justify a decree in personam for the cost of the suit. At one time it was held by this court that judgments in personam could be entered after constructive service of process upon a nonresident, and that such judgments were valid in the state where rendered, to support a sale of the debtor's property situated in such state. But this doctrine was greatly modified, if not entirely overthrown, by the Supreme Court of the United States, in the case of *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565, which change of doctrine was announced and recognized by this court in the case of *Exchange Bank v. Clement,* 109 Ala. 279, 19 South. 814.

If the decision of the majority in this case is to stand as the law, any resident of Ohio may wipe out and cancel, at his pleasure, all liability to persons who do not reside in Ohio. Not only this, but any other person

can go to Ohio and institute suit against his creditors, have himself summoned as garnishee, admit by his answer his indebtedness or liability, and have a judgment rendered against himself as garnishee, but in favor of himself as plaintiff; and then cancel such judgment against himself as garnishee by having it credited as payment against the judgment which he can take against his nonresident creditors. And it will be purely a matter of choice, whether he will be satisfied by entirely wiping out the debt he owes his creditors, or whether he will take the chance of having a personal judgment over against them for any amount that will suit his convenience or his notions as to propriety. As he represents all three of the parties, and nobody appears to oppose him, he may frame all the pleadings himself, make all the issues he desires, and admit, confess or deny any of them so made; and as he furnishes all the evidence that is to be received on the trial there can be no doubt that the judgments rendered will be to his liking.

In my opinion, the error into which the majority of the court have fallen, is that they have confounded or confused the situs of the debt garnished in the Ohio court, with the jurisdiction of the court over the garnishee.

Of course the Ohio court had jurisdiction over the plaintiff and over the garnishee, because they were one and the same person or corporation, and resided in Ohio, and invoked the jurisdiction of that court; but the court did not thereby acquire jurisdiction over the defendants' property the situs of which was in Alabama. The property held to be condemned by the garnishment in the Ohio court was no more within the jurisdiction of the Ohio court than was the person of the defendant. Both were equally beyond such jurisdic-

tion. . The property was that of the defendant, not of the plaintiff, nor of the garnishee.

The property thus condemned by the Ohio court (a chose in action) was Alabama property, and its situs— that is, all the situs it had or was capable of having— was that of its owner, who resides in Alabama. It is property which is taxable in Alabama, and not in Ohio. It was as much beyond the rights and powers of the Ohio corporation to confer on the Ohio court jurisdiction of this property, as it was jurisdiction of the person of the defendant. Neither the ownership, custody nor control was in the possession of the Ohio corporation, and how could it confer custody or control which it did not have ? It follows that the Ohio court had no more jurisdiction of the res than of the person of the defendant. In fact, in truth, and in law, the judgments of the Ohio court were nothing more nor less than personal judgments, which were absolutely void on collateral attack. One was a personal judgment in favor of the Ohio corporation, and against nonresidents, and this, the majority of this court concede and hold to be void; the other, a personal judgment against the Ohio corporation and in favor of the Ohio corporation— which is not only void but absurd, and certainly has no more efficacy to bind the defendant than the personal judgment rendered against him.

There is another reason why this whole proceeding in the Ohio court is void and of no effect as a defense to the suit in Alabama (suggested by my Brother SAYRE), and that is this: If the judgment against the garnishee in the Ohio court was offered in the Alabama court as a set-off, it would not avail as such, because it is not shown that it had been paid by the garnishee. Surely it could not be paid by applying it to an absolutely void judgment against the defendant and in fa-

[Oliver v. Kinney.]

vor of the garnishee, because, to have the effect of payment, it must be applied in payment of a valid judgment against the defendant.

If the judgment against the defendant was absolutely void, even on collateral attack (as it undoubtedly was, and the majority opinion in this case holds), then certainly it was of no benefit to the defendant, and of no detriment to the garnishee, to apply payment to such a nullity; yet this is the effect that is accorded to the Ohio judgment by the decision of the court in this case.

The trial court was clearly right in denying any effect to the Ohio record introduced in evidence, and no other error appearing on the record, the judgment of the lower court should be herein affirmed.

SAYRE, J., concurs in dissent.